WILLIAM DIXON, Plaintiff in Error, *v.* JOHN H. DUNHAM, Defendant in Error.

ERROR TO COOK COUNTY COURT ÒF COMMON PLEAS.

No usage or custom can be admitted in evidence to vary or control the express terms of a contract, but they may be admitted to determine that which by the contract is left undetermined.

The reason why a custom or usage is permitted to be found in any particular case, is the presumption that from its antiquity, extent, and universality, it entered into and formed a part of the contract, and therefore its antiquity, extent, and universality must be such as to warrant the conclusion that it was known to the contracting parties, and that they made their contract with a view to it.

Therefore, where by the contract expressed in the bill of lading, the defendant agreed to transport from the port of Buffalo to the port of Chicago certain goods, and deliver them to the plaintiff, who was the consignee at Chicago, where the plaintiff had a wharf at which he was doing business, and where the goods might have been delivered from the propeller; but the defendant also had a wharf to which his said vessel was accustomed to run, and where she delivered her freight: —

*Held,* that by the terms of the contract, in the absence of any usage to the contrary, the captain of the propeller would have been bound to have delivered the goods to the plaintiff at his place of business, if he had one within the port of Chicago accessible and convenient for the vessel. But that it was competent for the defendant to set up a custom or usage in the port of Chicago, that goods should be delivered at the wharf selected by the master of the vessel, and that consignees should receive their goods there, with averment of knowledge of such custom in the plaintiff, and that this contract was made in accordance with it.

THE plaintiff in error was the master of propeller Illinois, navigating between Buffalo and Chicago. The defendant in error shipped certain goods on this propeller at Buffalo to be conveyed to Chicago. The plaintiff in error brought the goods, and delivered them on the wharf of Dole, Rumsey & Co., and gave notice to the defendant in error of the arrival of the goods.

Dixon *v.* Dunham.

The defendant in error refused to receive them at the wharf where they had been left, and demanded that the goods should be delivered to him in person, or at his own wharf. This being refused, the defendant in error made a tender of the amount of freight and replevied the goods.

To the action in replevin two pleas were interposed: first, that there was established a custom and usage of trade in Chicago among the masters of vessels, forwarders, business men, &c., well established, known, certain, uniform, and reasonable and not contrary to law, that goods shipped from other ports and places should be delivered upon such dock and wharf in the city of Chicago as should be selected by the masters of vessels, &c., which amounted to a delivery of goods to the consignee.

The second plea sets up the custom and usage, averring that the defendant in error knew it, and shipped his goods subject to it, and a delivery of the goods and an offer to deliver in accordance with the custom, &c. The replication to these pleas avers that defendant in error, being a merchant in Chicago, doing business as such on a certain dock or wharf in Chicago, shipped the goods, &c., to be delivered to him at that place, &c., sets out the bill of lading, which is in the usual form, &c., the tender of the freight, &c., and requested the delivery of the goods at his place of business, which, by the bill of lading, the plaintiff was bound to do, &c.

By the bill of lading the goods were "to be delivered in like good order unto the consignee named in the margin, or to his assigns," &c. To which replication the plaintiff in error demurred. The court below overruled the demurrer, and the plaintiff in error excepted. And by agreement, the question presented to this court is, Whether the replication is a good answer to the pleas? If so, the judgment to be entered for the defendant in error; if not, then for the plaintiff in error. Either party to have leave to plead over.

ARNOLD and LAY, for plaintiff in error.

GRANT GOODRICH, for defendant in error.

CATON, J. From the diversified character of our commerce, this question which is now for the first time presented to this court for adjudication, is one of very considerable importance. While the convenience of commerce may require different rules for the delivery of goods, when transported by sail or steam vessels on the great lakes, on the rivers, on the canal, or by rail-

road, by plank, or the common roads, it would be very inconvenient for each commercial point on these thoroughfares to establish an independent usage by which the same contract would receive different constructions depending upon the place at which it was to be performed. Where the necessities of any particular line of commerce may render a particular usage so indispensably necessary as to commend itself to, and force itself upon, all those engaged in that line of commerce, there may be great propriety in allowing such usage, when it has become universal and well understood, and acquiesced in by all, to be proved, in order to explain the intention of parties upon points as to which the contract itself is not explicit, although without such usage the law might give it a different construction. This is allowed upon the same principle which allows other extraneous facts to be proved, in view of which parties have entered into engagements, and by the aid of which their intentions are ascertained, where otherwise they might be doubtful. Hence, in construing a bill of lading or other contract for transporting freight, we must look to the mode of transportation, by means of which the contract is to be performed; as if by water craft, navigating either the lakes, rivers, or canal, it is not to be presumed that the delivery is to be made away from the watercourse, or if by railroad, away from the track or depot of the road, unless it is otherwise expressly stipulated in the contract; if, however, this is expressly stipulated, that would show an intention that the carrier should use other means of transportation than those usually employed in the course of such trade. Such expressed intention would destroy the presumption that the contract was to be performed by the means of transportation in ordinary use, by the party undertaking to perform it. In construing contracts of affreightment, the courts themselves take notice of the course of trade and the means of transportation in use in carrying on that commerce, and in aid of the means of information which the courts are supposed to possess in reference to commercial transactions, usages which the necessities of a particular trade have established, have been allowed to be proved to the courts to aid them in giving a construction to contracts made in reference to such trade.

No usage or custom can be admitted to vary or control the express terms of a contract, but they may be admitted to determine that, which by the contract is left undetermined. The parties, by their contract, may abrogate any custom, no matter how ancient or uniform, but such custom cannot abrogate the terms of a contract. Whenever there is a conflict, the contract must control. The reason why a custom is allowed to be

proved for the purpose of interpreting a contract is, because both parties are supposed to have been acquainted with it, and to have contracted in reference to it. The custom does not become a part of the law of the place, but rather a part of the contracts which are to be performed at the place, and hence if the usage is excluded by the contract, it cannot constitute a part of it. In the case of the schooner Reeside, 2 Sumner, C. C. R. 567, Mr. Justice Story said : " The true and appropriate office of a usage or custom, is to interpret the otherwise undeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising not from their express stipulations, but from mere implications and presumptions and acts of a doubtful or equivocal character." A careful examination of all of the cases on the subject will but confirm the accuracy of the rule here laid down, whatever differences may be supposed to exist in the application of the rule in particular cases.

Some diversity will be found in the cases, in reference to the antiquity, extent, and universality of the custom, before it shall be permitted to enter into and form a part of the contract. It must be such at least as to warrant the conclusion that it was known to the contracting parties, and that they made their contract in view of and with reference to the particular usage, and that it was their intention that the contract should be executed conformably to it. Whoever will carefully study the reported cases will find that Mr. Angell, in his Law of Carriers, § 301, has very accurately stated the true rule on this subject. He says : " The doctrine in respect to all commercial usage is, that to have it take the place of general law, it must be so uniformly acquiesced in by length of time, that the jury will feel themselves constrained to say that it entered into the minds of the parties and made a part of the contract." In Singleton *v.* Hilliard, 1 Strobhart, 203, the action was against the owners of a steamboat, as common carriers, for the loss of a quantity of cotton by fire, and the defence was a custom exempting them from such liability. The court said, " That a custom or usage intended as in this case to alter established rules of law, must be of very long standing, so as to imply the general acquiescence of all parties, Co. Litt. 113 ; whereas this custom or usage of exemption to losses by fire is not only of very recent origin, but has been continually resisted." Uniformity as well as antiquity are essential to the validity of such a custom. Where it has been the subject of controversy and contention, claimed by one class and denied by another, and only submitted to under protest and to avoid litigation, it cannot be presumed to have been so acquiesced in as to have entered into and

formed a part of the contract. A valid usage must be not only submitted to, but should receive at least the tacit acquiescence of all classes engaged in the trade which it is sought to affect and control. These customs are established and approved from the necessities of trade, growing out of peculiar circumstances connected with it, and hence may have a greater or less territorial extent, or more general or restricted application, according to the circumstances which gave rise to them. The custom must also be reasonable in view of these circumstances. For instance, a vessel having a single package for a consignee in the port of Chicago, it might be very unreasonable to require the vessel to remove from her usual dock, where she is accustomed to land and discharge her freight, and a custom absolving her from such duty might very readily acquire stability among all parties, whereas, were she loaded with an entire cargo for one consignee, as timber, or pig, or railroad iron, it might be very unreasonable for the captain to claim the right to deliver the cargo at a distance from the wharf of the consignee, where he would not only be compelled to have it reshipped or transported by land, but also to pay wharfage; and a custom which would secure that privilege to a carrier would be likely to meet with opposition, if not with continued resistance, and from its character a very long and entirely uniform custom would have to be clearly proved, before it would be allowed to prevail, if it would not be rejected altogether as unreasonable. Customs are instituted and admitted to promote the interests and convenience of trade under the supposition that the slight inconvenience which one class suffers by reason of them, is more than counterbalanced by the benefits to another class, and that the inducements thus offered compensate the lesser loss by the reduced charges which are thereby induced.

By the contract expressed in the bill of lading, the defendant agreed to transport from the port of Buffalo to the port of Chicago the goods in controversy, and to deliver them to the plaintiff, who was the consignee, at the port of Chicago. The plaintiff had a wharf or dock, at which he was doing business, and at which the goods might have been delivered from the propeller. And the question is, Whether the terms of the bill of lading are so specific as to require the carrier to deliver the goods at the wharf of the consignee at all events, or whether he might, in pursuance of the custom or usage of trade in the port of Chicago, deliver the goods on the wharf to which the vessel was accustomed to run, and where she was used to deliver her freight? In the absence of any usage to the contrary, there is no doubt that under the contract the captain would

Dixon *v.* Dunham.

have been bound to deliver the goods to the consignee at his place of business, if he had one within the port of Chicago, which was accessible to the vessel and convenient for the delivery of the goods, and yet this would have been but an inference or implication of law, arising from, but not expressly stipulated by the terms of the contract of affreightment. The terms of the contract do not define the place within the port of Chicago where the goods are to be delivered, but only the person to whom they are to be delivered. They might have stipulated the place of delivery, which might have been the plaintiff's wharf, or any other place. In the absence of such stipulation, the place must be determined either by presumption of law, or the usage of trade. In either case this is done in pursuance of the supposed intention of the parties. Where the goods are to be transported in vessels, it cannot be supposed that it was the intention of the parties that the carrier should convey the goods to a place inaccessible to the vessel. Or if by railroad, to a place which the cars could not reach. Where there is a usage of trade, in reference to which the contract is made, that usage becomes a part of the contract, and determines the intention of the parties as satisfactorily as if that intention had been expressed upon the face of the bill of lading. It contradicts and is inconsistent with none of its express provisions. Had this bill of lading provided that the goods should be delivered to the consignee at the wharf of Dole, Rumsey & Co, there would have been nothing inconsistent or contradictory in its terms. The designation of the place of delivery would have been but filling up a blank which was left in the contract, which must be filled up either by intendment of law, or by extraneous circumstances, which may serve satisfactorily to show what was the real intention of the parties. This may be done either by a long and uniform course of dealing between the parties themselves, or of all persons engaged in that trade. The presumption of law as to the place or particular mode of performance, is but a presumption, and may be overcome, and another presumption substituted in its place, by facts and circumstances indicating clearly and satisfactorily that the parties intended that the contract should be performed in a different mode, or in another place. The pleadings in this case show that the parties did intend that the contract should be performed in a way different from such legal presumption. The pleas aver that there had been, for a long time, a custom and usage at the port of Chicago, among the masters of vessels, shippers, and consignees, that goods transported to that port in vessels, should be delivered at the wharf selected by the master of the vessel,

28 *

and that consignees should receive the goods at such wharf; and that such custom was well established, known, certain, uniform, reasonable, and not contrary to law, and well known to the plaintiff previous to the time when the goods were shipped, and acquiesced in by him; and that the goods were received on board the propeller, to be transported to Chicago, in accordance with said custom. And the pleas further show, that the goods were delivered at the dock in Chicago selected by the captain of the vessel, and that the plaintiff was duly notified thereof; but that he refused to receive them there, and pay the freight thereon; wherefore the defendant retained the goods, &c. Indeed, no question was made upon the argument that the usage was well pleaded, if this is such a contract as may be explained by a usage of trade. We have already seen that such is the case. Had the plaintiff not desired to receive the goods according to the custom of the port of delivery, knowing as he did what that custom was, and that it was uniform and well established, he should have instructed his forwarder at Buffalo to have inserted a special clause in the bill of lading, stipulating that the goods should be delivered at the plaintiff's wharf, thus abrogating the custom in the particular instance; he did not do this; and the inference is, that he intended to conform to the custom, in view of which the contract was made. The bill of lading set up in the replication is not an answer to the pleas, and the demurrer should have been sustained.

The judgment of the common pleas must be reversed, and the cause remanded.

*Judgment reversed.*