FIRST NATIONAL BANK OF WAXAHACHIE V. THE LANCASHIRE INSUR-
ANCE CO.

(Case No. 1665.)

1. POLICY OF INSURANCE — CONSTRUCTION OF CONTRACT. — Under the terms of
an open policy of insurance the property to be covered by it was required
to belong to the insured, or held by it (a bank) in trust, or on commission,
or sold and not delivered. It was also required to be at the place specified
in the entry, which by the terms of the contract was to be made in the book
accompanying the policy. The insured advanced money to a third party to
purchase cotton, under an agreement to return the money when the cotton
was sold, and, if it was shipped, that the bills of lading should be taken in
its name. Held:
   (1) The cotton was not covered by the policy.
   (2) Had it been shipped and the legal title thereto been then vested in the
bank, it would still not have been covered, because removed from the only
place where the risk would attach.
   (3) The courts cannot extend the risk beyond what is plainly written in a
policy.
   (4) Custom or the course of dealing between parties may sometimes be
looked to to interpret what is doubtful, but not to contradict plain and un-
ambiguous stipulations.
   (5) When the language of a policy of insurance defines and limits the
authority of the company's agent, no act of his transcending his authority
is binding on the company.

APPEAL from Ellis. Tried below before the Hon. Geo. N.
Aldredge.

The appellee (an English insurance company) issued to Patrick,
McMillan & Co. an open policy of insurance, for the purpose of in-
suring against loss or damage by fire such property as might be
entered by appellee's agents, in a book attached to the policy. This
policy was, with the consent of appellee, assigned, in October, 1883,
to appellant. Appellee received, first, from Patrick, McMillan &
Co., and afterwards from appellant, a number of premiums under
the policy, and made a corresponding number of entries in the book,
attached to the policy. Among the entries made in the book was
that of November 1, 1883, whereby appellant claimed to be in-
sured from November 1, 1883, to November 6, 1883, to the amount
of $6,000 on certain cotton specified in the entry. This cotton hav-
ing been destroyed by fire on the 5th day of November, 1883, ap-
pellant sued, making the above mentioned policy the basis of the
suit, setting up its issuance to Patrick, McMillan & Co., its assign-
ment to appellant, the entry of November the 1st in the book
attached to the policy, the destruction by fire of the cotton specified
in the entry, and various other matters hereinafter stated more at

large.  To appellant's first amended original petition appellee presented demurrers, general and special; and these having been sustained by the court, and appellant declining to amend, a final judgment was entered against appellant dismissing the amended petition and awarding costs to appellee.  From this judgment sustaining the demurrers of appellee and dismissing appellant's cause of action, appellant prosecutes an appeal.

The written words of the policy which set forth particularly the character and limitations of the contract, the character of the property insured, the relation of the assured to the property, its locality, etc., were as follows:

" Whereas Patrick, McMillan & Co. have paid as per indorsement the sum of ———— dollars to the Lancashire Insurance Company for insuring from loss or damage by fire the property hereinafter described, not exceeding the sum specified on each article, viz.: on goods, wares, merchandise, produce, or other property, . . . their own, or held by them in trust or on commission, or sold but not delivered, as shall be specified and indorsed in the book attached by this company or its legally authorized and commissioned agents, and for such amounts in such store houses and places, and at such rates of premium as shall be approved and indorsed in book attached hereto by one of the officers of this company, or its legally authorized and commissioned agents at Waxahachie, Texas.  No entry to be binding on this company until countersigned by the duly authorized and commissioned agents of this company; . . .  The said Lancashire Insurance Company hereby agree to make good unto the said assured, their executors, administrators and assigns, all such immediate loss or damage, not exceeding in amount the sum or sums insured, as above specified, nor the interest of the assured in the property, except as herein provided, as shall happen by fire to the property so specified and located, but not otherwise or elsewhere, from the 14th day of October, 1882, at 12 o'clock at noon, until revoked."

The plaintiff first alleged that the cotton destroyed was its own. It then alleged that if not its own, the cotton was held by it in trust.

3d.  If the cotton was not its own or held by it in trust, then plaintiff alleged that "said policy and said entry (No. 12) in said book covered and insured, and was intended to cover and insure, all cotton at and between said dates on and to be placed on said yard, purchased by one S. W. King, and paid for with funds of plaintiff in pursuance of an agreement and understanding between plaintiff and said King, that the cotton so purchased and paid for should

secure and stand bound for said money; that the proceeds of such cotton when sold shall go and be paid to plaintiff; that the bills of lading for such cotton, when the same was shipped off for sale, should be issued in the name or be assigned to plaintiff — the said agreement being that plaintiff should in effect be the owner of said cotton, and being made to the end that the funds of plaintiff used in the purchase of the same might be repaid and made good to plaintiff out of the proceeds of said cotton."

Plaintiff further set up that the defendant was estopped to deny that it was the owner of the cotton for reasons referred to in the opinion.

The defendant filed a general demurrer and special exceptions, and answered at great length to the merits.

The court sustained the general demurrer.

The plaintiff declined to amend and the cause was dismissed.

*S. C. McCormick*, for appellant, cited, on sufficiency of petition: Georgia Home Ins. Co. *v.* Jacobs, 56 Tex., 372; Wood on Fire Ins., sec. 270, p. 500; sec. 492, pp. 823 and 824; secs. 419 and 420, pp. 724 to 728; and sec. 417, pp. 715 and 716; May on Ins. (2d ed.), §§ 468 and 469, pp. 710 to 714; Rising Sun Ins. Co. *v.* Slaughter, 20 Ind., 520; Nichols *v.* Fayette Ins. Co., 1 Allen (Mass.), 63; Fowler *v.* N. Y. Ins. Co., 23 Barb. (N. Y.), 150; Franklin *v.* National Ins. Co., 43 Mo., 491; Nautes *v.* Thompson, 2 East, 509; Rockford Ins. Co. *v.* Nelson, 65 Ill., 415.

That appellee was bound by the course of past dealing, he cited: Dewees *v.* Lockhart, 1 Tex., 535; Cross *v.* Shutliffe, 1 Am. Dec., 645; S. C., 2 Bay (S. C.), 220; Coit *v.* Commerial Ins. Co., 5 Am. Dec., 282; 7 Johns. (N. Y.), 375; Sampson *v.* Gazzan, 30 Am. Dec., 578; S. C., 6 Port. (Ala.), 123; Brough *v.* Whitmore, 4 Term R., 206; Hough *v.* City Fire Ins. Co., 29 Conn., 10.

Delany, J. Com. App.— Notwithstanding the length of the pleadings and the number of the assignments of error, the questions to be determined in this case are very few.

The policy was originally issued to Patrick, McMillan & Co., and by them transferred to the plaintiff, with the consent of the insurance company.

Under this policy, goods, wares and merchandise might be insured, but only under certain circumstances. By the written terms of the policy, the assured must sustain certain definite relations to the property. It must be their own property, or held by them in trust or on commission, or sold but not delivered.

It must also be at the place specified in the entry, which by the terms of the contract was to be made in the book accompanying the policy.

It is easy to see why the plaintiff, in its pleadings, did not rest content with the allegation that the property destroyed was its own, or was held by it in trust. In either case the petition would have been good upon demurrer, because it would have stated a case which came fully within the terms of the policy.

But as the proof might not have sustained such allegations, it was necessary to set out the real condition of the property which was destroyed and for the loss of which the plaintiff sought a recovery.

And thus it appears that the property destroyed did not belong to the plaintiff and was not held by it in any of the capacities mentioned in the policy.

It belonged to one King. He had bought it with funds advanced by the plaintiff, upon an agreement that when it was sold he was to return the money.

This was a personal trust reposed by the plaintiff in King. There seems to have been a further agreement between them, that if the cotton was shipped the bills of lading should be taken in the name of or be transfered to the plaintiff.

In the event of a shipment, the bills of lading, being taken in the name of the plaintiff or transferred to it, would have passed to it the legal title. Still the property would not then have been covered by the policy, because it would have been thus removed from the place, and the only place, at which the risk would attach.

The language of the policy is plain and unambiguous. There is no room for construction; and the defendant has a right to insist upon the letter of the contract as it was made.

Innumerable authorities might be cited to sustain this elementary rule; and we refer to one only to show how strictly the courts have enforced it in insurance cases.

" The policy," says Wood in his work on insurance, " must be construed according to its terms and the evident intent of the parties, to be gathered from the language used, and the court cannot extend the risk beyond what is fairly within the terms of the policy." Sec. 67, p. 157.

And he gives as an example the following case lately decided in England:

" A time policy against fire was effected on a steamship. The policy described it as then ' lying in the Victoria docks,' but gave

'liberty to go into dry-dock and light the boiler fires once or twice during the currency of this policy.'

"The only dry-dock into which the ship could go was Lungly's dock, some distance up the river. To go there it was necessary to remove the paddle wheels. They were removed in the Victoria docks and the ship was then towed up to Lungly's dock. The necessary repairs there having been completed, the ship was brought out and moored in the river preparatory to replacing the paddle wheels.

"This operation could have been performed in the Victoria docks; but it was found that, in such case, it was customary, as the more economical course, to replace the paddle wheels while the ship lay in the river. Before the wheels had been replaced the ship was burnt.

"The court held that the policy covered the ship while in the Victoria docks, and while passing from them to the dry-dock, and while returning directly from the dry-dock to the Victoria docks, but did not cover the vessel while moored in the river for a collateral purpose."

One of the judges said: "To construe the policy as allowing the vessel to remain in the river while the paddle wheels were replaced would be to add a new condition to the policy, which cannot be done." See, also, Home Ins. Co. v. Baltimore Warehouse Co., 3 Otto, 527. We may admit that the plaintiff had an insurable interest in the property, and might have taken out a policy to protect that interest; but it was not such an interest as was protected by this policy.

There is only one other question. Appellant insists that, although the policy, if strictly construed, might not cover the property in question, still, by its course of dealing with the plaintiff, it is precluded from adhering to the strict letter of the contract, and has committed itself to a more liberal interpretation, which would cover the interest of appellant in the property.

To this end it is set forth in the petition that the defendant took the present risk with full knowledge of the nature of plaintiff's interest in the cotton; that before this it had taken a number of risks on cotton bought by King with the money of plaintiff, just as this had been, and had received the premiums with full knowledge of all the facts, and had thus induced the plaintiff to believe that the terms of the policy would cover and protect the interest of plaintiff in the cotton.

To this we may reply that custom or the course of dealing be-

tween parties, like other extraneous facts, may sometimes be looked to to interpret what is doubtful, but not to contradict what is plain. Wood on Ins., sec. 501, pp. 848–9.

The author remarks, in the section just quoted, that, although a custom or usage be inconsistent with the *printed* conditions of a policy, it may, nevertheless, be shown, not to alter or vary the contract, but to show that such conditions were waived.

It is well settled that the agent of an insurance company keeping within the limits of his authority may by his acts, and sometimes by his failure to act when he ought to do so, dispense with conditions or waive forfeitures, and thus bind the company.

And we think that most of the cases cited by counsel for appellant will fall within that class. Among them is the case of The Crescent Ins. Co. *v.* Griffin, 59 Tex., 509.

There the policy contained a provision to the effect that " if the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, . . . then, and in every such case, this policy shall be void."

As a matter of fact, other insurance was obtained upon the property, and the agent of the company was informed of the fact. It was his duty to indorse the consent upon the policy, or to see that it was done; but he failed to do this, and, with full knowledge of the facts, took other risks upon the same property in other companies which he also represented. It was held that the condition was waived.

The difference between that class of cases and the one before us is, that in this case the written language of the policy defined and limited the power of the agent.

He could not bind the company by taking risks on any property, unless that property was owned by the plaintiff or held by it in trust or on commission, or had been sold by it and not delivered.

The plaintiff was bound to take notice of that limitation, and if it went beyond it in its dealings with the agent, it did so at its peril.

Our opinion is that the judgment should be affirmed.

AFFIRMED.

[Opinion adopted November 24, 1884.]