## Mobile Fruit and Trading Co. v. J. H. Judy & Son.

1. CUSTOMS AND USAGES OF TRADE—*General Requisites.*—In order to establish a custom and usage of trade and make it binding upon the parties it must be proven to be so general, uniform, ancient, and to have existed for such a length of time, as will warrant the inference that the party against whom the right is claimed had knowledge of it and contracted with reference to it.

2. SAME—*Evidence of, for What Purpose Admissible.*—Where a commercial contract is in any respect ambiguous, and the necessities of the particular line render a particular custom or usage so indispensably necessary as to commend itself to and enforce itself upon all those engaged in that line of commerce, evidence of such custom and usage is admissible when it has become universal, well understood and acquiesced in

Mobile Fruit & Trading Co. v. J. H. Judy & Son.

by all, in order to explain the intention of the parties upon the points as to which the contract is not explicit, and where without such custom or usage the law might give it a different construction.

3. SAME—*Must be Pleaded.*—A custom or usage of trade, in order to be invoked and proved by a party to a contract, must be specially pleaded.

4. EVIDENCE—*Of Customs and Usages of Trade, When Admissible.*—Evidence of a custom or usage of trade is not admissible for the purpose of varying or controlling the express terms of a contract, but is admissible for the purpose of interpreting the contract when both parties to it are supposed to have been acquainted with it and contracted with reference to it.

5. PRACTICE—*Motions for New Trials, When to Be Made.*—A motion for a new trial is in apt time if made at any time during the term of court, although after judgment has been entered upon the verdict.

Assumpsit, for goods sold and delivered. Appeal from the Circuit Court of McLean County; the Hon. JOHN H. MOFFETT, Judge, presiding. Heard in this court at the May term, 1900. Reversed and remanded. Opinion filed September 11, 1900.

HENRY D. SPENCER, attorney for appellant.

A usage or custom can not be shown to vary or control an express contract, but only to interpret that which otherwise would be doubtful or equivocal. Fay v. Strawn, 32 Ill. 295; Ill. Masons' Benevolent Society v. Baldwin, 86 Ill. 479.

A custom, to avail as such, must be ancient, certain, uniform, reasonable, and so general as to afford a presumption that the parties contracted with reference to it. 2 Parsons on Contracts, 53; Dixon v. Dunham, 14 Ill. 324; Bissell v. Ryan, 23 Ill. 566; Turner v. Dawson et al., 50 Ill. 85; Leggat v. Sands Ale Brewing Co., 60 Ill. 158; Wilson v. Bauman, 80 Ill. 493; Decatur National Bank v. Murphy, 9 Ill. App. 112.

A custom to be valid must be general. A portion of the community can not make one. Marine Bank v. Chandler, 27 Ill. 548; Ill. Masons' Benevolent Society v. Baldwin, 86 Ill. 479; Bissell v. Ryan, 23 Ill. 566; Sigsworth v. McIntyre, 18 Ill. 126; Coffman v. Campbell, 87 Ill. 98; Caldwell v. Meek, 17 Ill. 220.

A local usage can not be proved to contradict a contract

or to subvert a well established rule of law. Globe Milling Co. v. Minn. Elevator Co., 44 Minn. 153.

No usage is good which conflicts with an established principle of law E. Birmingham Land Co. v. Dennis, 85 Ala. 565.

A usage contrary to law is never admitted to control the general rules of law or the real intent and meaning of the parties. Thompson v. Riggs, 72 U. S. (5 Wall.) 663.

A usage to be binding should be definite, uniform, well known, and be established by clear and satisfactory evidence so that it may be justly presumed that parties making the contract had reference to it. Bowling v. Harrison, 47 U. S. (6 How.) 248.

A custom must be compulsory. Were it in the opinion of every man whether he would conform to a custom or not, were it a matter which might be referred for a decision to his good pleasure, it is evident that it would be invalid upon another ground, namely, uncertainty. Adams v. Otterback, 15 How. (U. S.) 539.

A custom must be continued. There must be no interruption nor temporary ceasing of the right. 1 Dane's Abr., Chap. 26, Par. 2.

Acts of accommodation or indulgence do not make a usage. Thus, a mere habit of accommodation or indulgence does not establish a usage. · A creditor, for example, may indulge a debtor in one or two cases without binding himself to do likewise in the future. Brent v. Cook, 12 B. Mon. 268.

Usage not known to parties is not binding upon them. Proof of knowledge as a matter of fact is required in order to give effect to any and all particular usages, not of so general a nature as to furnish a presumption of knowledge. Berkshire Woolen Mill Co. v. Proctor, 7 Cush. (Mass.) 471.

The custom of others to do certain acts can not support a similar act done by a party who was himself ignorant of any such custom, and whose actions, therefore, could not have influenced his conduct in the least. Kinne v. Ford, 53 Barb. (N. Y.) 194.

WELTY & STERLING, attorneys for appellees.

Under the contract in this case, the shippers were bound to deliver the goods in Bloomington in a reasonably good condition for the market. It is an established custom between shippers of fruit from Mobile and other southern ports to this part of the country, that the consignor assumes the risk. This custom becomes a part of the contract in this case, and appellant is bound by that custom. Samuels v. Oliver, 130 Ill. 79; Bailey v. Bensley, 87 Ill. 556; Lyon & Co. v. Culbertson, Blair & Co., 83 Ill. 33; Doane et al. v. Dunham, 79 Ill. 131.

A usage or custom of trade may be proved to interpret such intentions of the parties as are not expressed in the contract. Lyon & Co. v. Culbertson, Blair & Co., 83 Ill. 33; Dixon v. Dunham, 14 Ill. 324; Fay & Co. v. Strawn, 32 Ill. 295.

A party dealing in a particular market is presumed to know all the customs of such market bearing on the transaction in which he is engaged. Cothran v. Ellis et al., 107 Ill. 413.

All contracts made in the ordinary course of business without particular stipulations, expressed or implied, are presumed to be made in reference to any existing usage or custom relating to such trade, and it is always competent to resort to such usage to ascertain and fix the terms of a contract. Lonergan v. Stewart, 55 Ill. 44.

Whether a particular custom does or does not exist in a particular locality, is a question of fact for the jury. Chicago Packing and Provision Co. v. Tilton, 87 Ill. 547.

The statement of account rendered by appellees herein is not conclusive upon them. They are entitled to correct errors. Pick & Co. v. Slimmer, 70 Ill. App. 358; Gruby v. Smith, 13 Ill. App. 43.

No exceptions were taken to the judgment of the court in this case, and the bill of exceptions does not show any exception. Therefore no question arises in this court that can be considered on review. Everett v. Coll. Zinc Co., 41 Ill. App. 552; Levy v. Glickauf, 41 Ill. App. 251; National

Bank v. LeMoyne, 127 Ill. 253; People v. McCoy, 132 Ill. 138; Roblin v. Yaggy, 35 Ill. App. 537.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit in which appellant claims to recover from appellees the sum of $256.75 for 395 bunches (one car load) of bananas alleged to have been sold and delivered by it to them for that price.

The case was tried by jury in the Circuit Court of McLean County, resulting in a verdict and judgment for appellees. Appellant prosecutes this appeal to reverse that judgment, urging among other grounds, that the court admitted improper evidence against appellant, and that the verdict and judgment are contrary to the law and the evidence.

The declaration, with the affidavit of merits attached, alleges that appellees are indebted to appellant in the sum of $256.75 for 395 bunches of bananas, sold to them at seventy-five cents per bunch, but appellees claiming the bananas were damaged, appellant had consented to make a rebate of ten cents a bunch, upon which they had accepted them, but had afterward failed and refused to pay for them.

Appellees pleaded the general issue only. The evidence shows that appellant is a corporation having its principal office in the city of Mobile, Alabama, and is engaged in importing and shipping bananas; that appellees are engaged in selling bananas, fruits and farm products in the city of Bloomington, Illinois; and that on August 20, 1898, appellant offered appellees by wire, " Bocas " bananas " straight " for eighty cents per bunch, and " culls " for fifty cents, shipment to be made the next day (Sunday), requesting answer " quick." On August 22d, appellees replied by wire as follows : " Can use small car ' Bocas ' at seventy-five cents, fancy," to which appellant wired them same day, as follows : " Shipped yesterday Armour 6203 via Illinois Central."

On Sunday, August 21st, appellant loaded at Mobile, Armour car number 6203, with 395 bunches of bananas of the kind and quality named in appellees' telegram of August 22d, the car being of the kind usually employed in which

Mobile Fruit & Trading Co. v. J. H. Judy & Son.

to ship bananas, and the fruit being properly loaded and in good condition. This car, together with others likewise loaded, started north from Mobile, via Illinois Central Railroad, on the same day they were loaded, appellant sending a messenger with the cars as far as Cairo, Illinois. to see that the fruit was kept properly ventilated while en route. Upon the car in question arriving at the latter city, it was immediately billed and forwarded to appellees, in good condition; the weather, however, was hot and rainy. The car arrived at Bloomington on the afternoon of August 23d, was opened at once by appellees, and the bananas found to be hot and somewhat injured, whereupon they immediately wired appellant as follows: " Bananas cooked; refused; bad car to ship in;" to which appellant replied same afternoon by wire as follows: " If car improperly ventilated, road responsible; better unload quick, avoid loss;" to which appellees answered same day by wire as follows: " Will sell on commission only; not unload to-night." The next morning appellant wired appellees as follows: " Will protect you extent ten cents bunch, if forced make disposition will be for your account," and sent them by mail the following letter :

" MOBILE, ALABAMA, 8, 24, 1898.
MESSRS. J. H. JUDY & SON, Bloomington, Illinois.

DEAR SIRS : Referring to our interchange of wires regarding car of bananas shipped Sunday, beg to say you treated us shabbily. The fruit in the first place was exceptionally fine, and the price low. Since the weather has been extremely hot for the past few days, it was unreasonable of you to expect that fruit would reach you in the very best condition. We note your statement that the car was not suitable, but it is such as all shippers of bananas are using, and with general satisfaction. What is your objection to the car ?

Yours truly,
MOBILE FRUIT & TRADING CO.
H. L. McConnell, President."

On the morning of August 24th, appellees unloaded the bananas from the car and sold them in the usual course of business. On August 26th, appellees received appellant's letter which they answered as follows :

"Bloomington, Ills., August 26, 1898.

Mobile Fruit Co., Mobile, Ala.,

Dear Sirs: We note what you say about bananas in yours of the 24th. The fact is the bananas is the worst lot ever shipped to this place. The car was a mass of cooked and rotten bananas. The men that unloaded the car were covered from head to foot with the slime. They had to leave some in the cars. They could not be moved from it. There are three other houses here handling bananas. The agent of the railroad tried to get some of them to take it, but they would not touch it at any price. Neither would they take any from us to help dispose of it, so bad were the fruit. When you say 'we treated you shabbily,' you do not know what you are saying. Were you in our place you would have done no better, I assure you. There is no house here with better facilities to handle goods than we have, and we are doing the best under the circumstances.

Respectfully,

J. H. Judy & Son."

After receiving this letter, appellant drew upon appellees for $256.75, being 65c. per bunch for the bananas; but appellees declining to pay the draft, it was returned to appellant, and it then sent appellees a letter as follows:

"Mobile, Ala., 9, 6, 1898.

Mess. J. H. Judy & Son., Bloomington, Ills.

Dear Sirs: Our draft on you for $256.75 on account of invoice of the 21st ult., has been returned indorsed 'Says we don't owe.' Please let us hear from you at once, with explanation of that indorsement, and your failure to pay our draft.

You accepted and unloaded the fruit after we wired you that we would protect you against loss to the extent of ten cents per bunch.

Yours truly,

Mobile Fruit & Trading Co.

H. L. McConnell, President."

To this letter appellee replied as follows:

Bloomington, Ills., Sept. 10, 1898.

Mobile Fruit & Trading Co., Mobile, Ala.

Dear Sirs: Replying to yours of the 6th, would say, it seems hardly necessary again to go into explanation about that car of bananas that we refused on account of its worthless condition. We wired you that we would only accept it on consignment, and wrote you its condition when

Mobile Fruit & Trading Co. v. J. H. Judy & Son.

unloaded, that part of it could not be removed from the car. The entire car was scalded and heated, making it a rotten mass. You wired the railroad agent here, and he could get no one here to touch it, for all said it was the worst car of bananas ever shipped to this market. We took the car on consignment, and wrote you we would do all we could for you. Our bookkeeper is absent to-day. On his return will report to you at once.

Respectfully,

J. H. JUDY & SON."

On September 20, 1898, appellees sent appellant the following:

" BLOOMINGTON, ILL., 9. 2, 1898.

Account sales by J. H. JUDY & SON, Commission Merchants. For account of Mobile Fruit & T. Co., received:

| | | |
|---|---|---|
| 28 bunches of bananas | $22 | 40 |
| 5 bunches of bananas | 3 | 00 |
| 40 bunches of bananas | 20 | 00 |
| 59 bunches of bananas | 23 | 00 |
| 40 bunches of bananas | 24 | 00 |
| 70 bunches of bananas | 27 | 50 |
| 60 bunches of bananas | 18 | 00 |
| 93 dump. | $137 | 90 |

395 bunches, $137.90

Charges:

| | | |
|---|---|---|
| Returning empties | | |
| Freight and drayage | $117 | 24 |
| Express | | |
| Commission | 13 | 97 |
| | $131 | 03 |

E. & O. E. net proceeds........................       6  87 "

Enclosing therewith an express money order for $6.87, upon receipt of which appellant returned to appellees the order and wrote them as follows:

" MOBILE, ALABAMA, 9, 24, 1898.

MESS. J. H. JUDY & SON, Bloomington, Illinois.

DEAR SIRS: We are in receipt of your account of sales, dated the 20th instant, covering A. R. S. No. 6203, bananas shipped on the 21st ult. Also express money order for $6.87, which we herewith return. That car of fruit was

·sold to you at $.75 per bunch, and after rejecting it, which you had no legitimate reason to do, you accepted it at $.65; and unless you at once remit us the amount of the invoice, less $.10 per bunch, we will take legal steps to force collection.

Yours truly,<br>
MOBILE FRUIT & TRADING Co.,<br>
H. L. McConnell, President."

On the trial of this case the court permitted appellees, over the objections of counsel for appellant, to offer some testimony concerning the existence of a custom among shippers of bananas from Mobile to buyers in Bloomington, to the effect that the loss or damage upon bananas by heating while in transit is borne by the shipper. Counsel for appellant insists that this testimony ought not to have been admitted for two reasons : first, because no such custom was pleaded; and second, because even if such a custom existed as claimed, yet appellees could not invoke it in this case, to vary or control the express terms of the contract under which the bananas were purchased.

The rule is well recognized that where a commercial contract is in any respect ambiguous, and the necessities of the particular line of commerce render a particular custom or usage so indispensably necessary as to commend itself to enforce itself upon all those engaged in that line of commerce, there may be great propriety in allowing such custom or usage to be proved when it has become universal, well understood and acquiesced in by all, in order to explain the intention of the parties upon the points as to which the contract itself is not explicit, although without such custom or usage, the law might give it a different construction. This is allowed upon the same principle which allows other extraneous facts to be proven, in view of which parties have entered into contract, and by the aid of which their intentions are ascertained; where otherwise they might be doubtful. Such custom or usage will not, however, be admitted to vary or control the express terms of a contract but will be permitted to determine that which by the contract is left undetermined for the purpose of interpreting a

contract when both parties thereto are supposed to have been acquainted with it, and to have contracted with reference to it.   Dixon v. Dunham, 14 Ill. 324; Gilbert & Co. v. McGinnis et al., 114 Ill. 28, and C., C., C. & St. L. Ry. Co. v. Jenkins, 174 Ill. 398.

But such particular custom or usage in order to be invoked and proved by a party to such a contract must be specially pleaded, evidence thereof not being admissible under the general issue.   Leggat et al. v. Sands Ale Brewing Co., 60 Ill. 158, and 1 Saunders' Pl. and Ev. 884–886.

And while we are of opinion that a custom or usage such as counsel for appellees attempted to show in this case, if one existed when the contract sued upon was made, could be shown, if properly pleaded, yet the general issue being the only plea that appellees interposed to the declaration, the court improperly admitted the testimony concerning such custom under the pleadings.   And even if such a custom or usage was in force, as contended by counsel for appellee, yet the evidence failed to show that it had existed so generally, and to such an extent, and for such a length of time as to have become generally known, and thus warrant the presumption that it was known by appellant and that it entered in the contract sued on, in reference thereto; for in order to establish such a custom or usage, and make it binding on the parties, it ought to be proven to be so general, uniform, frequent, and to have existed for such a length of time as will warrant the inference that the party against whom the right is claimed, had a knowledge of, it, and contracted with reference to it.   Bissell v. Ryan, 23 Ill. 566.

Counsel for appellees also contend that appellant is not entitled to have this case reviewed in this court for the reason that it made no motion for a new trial until after judgment was entered on the verdict, and took no exception to the judgment.

While the record shows that when the jury returned their verdict, the court rendered judgment thereon in favor of appellees, and appellant is not shown to have interposed

an objection at that time, yet it also shows that eight days thereafter, and during the same term of. court, appellant filed a motion in writing, to set aside the verdict and judgment, and grant a new trial for the following (among other) reasons:

"First.   The court on the trial admitted improper evidence in behalf of the defendants (appellees).

Fifth.   The verdict is contrary to the law.

Sixth.   The verdict is contrary to the evidence."

Which motion the court heard and overruled, "to which ruling of the court the plaintiffs (appellants) by counsel, then and there excepted."

By section 57 of our practice act it is expressly provided:

"If either party may wish to except to the verdict, or for other causes to move for a new trial,   *   *   *   he shall, before final judgment be entered, or during the term it (verdict) is entered, by himself or counsel, file the points in writing, particularly specifying the grounds of such motion, and final judgment shall thereupon be stayed until such motion can be heard by the court."

So that by the express provision of that section, appellant was in apt time when he filed his motion during the term the verdict was rendered, and by excepting to the ruling of the court in denying the same, is in a position to urge in this court, the same grounds for reversing the judgment rendered against it, as were specified in the points named in the motion for a new trial. The Ottawa, Oswego & Fox River Valley R. R. Co. v. Mc-Math, 91 Ill. 104, and cases cited. The cases of Everett v. Collinsville Zink Co., 41 Ill. App. 552, National Bank et al. v. LeMoine et al., 127 Ill. 253, People v. McCay, and others cited by counsel for appellant, were all cases in which there was a trial by the court without a jury, and no motion for a new trial made, or any exceptions taken to the findings of, or judgment rendered by the court, and the reviewing courts held they would not review the cases for that reason.   But those cases have no application to the case at bar, where a motion for a new trial was made in the time allowed by the statute, and an exception to the

ruling of the court on the motion properly preserved in the bill of exceptions.

For the erroneous rulings of the Circuit Court in the admission of improper evidence, as above indicated, we will reverse its judgment herein and remand the case to that court. Reversed and remanded.