**CONTINENTAL CASUALTY CO. v. EASLEY
et al. (No. 9665.)***

(Court of Civil Appeals of Texas. Dallas.
Nov. 27, 1926. Rehearing Denied
Jan. 8, 1927.)

**1. Insurance ⚖➡82—"Account current" is insurance agent's statement of policies written and premiums returned on cancellations during month; net premiums being recorded whether paid or not.**

An "account current" is statement by insurance agent in which he includes all policies written during the month and all return premiums on policies canceled during that month, and brings down his net premiums less his commission and whatever other charges or balances are due company for transactions during that month, regardless of whether or not premiums were paid or collected.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Account Current.]

**2. Contracts ⚖➡152—In determining whether language of written contract is ambiguous, it should be given commonly accepted meaning.**

In determining whether language of written contract is ambiguous or of such doubtful meaning as to render intent and meaning of parties uncertain, language employed in contract should be given its everyday, commonly accepted meaning.

**3. Customs and usages ⚖➡15(1)—If provisions of written contract are unambiguous, they cannot be changed by proof of custom at variance therewith.**

Where provisions of written contract are clear and unambiguous, they cannot be changed or affected in meaning by proof of custom at variance with them.

**4. Customs and usages ⚖➡15(1)—Parol evidence of custom may be introduced only when from terms of contract intent of parties is ambiguous.**

It is only where court is unable to arrive at real meaning and intention of parties from terms of contract that parol evidence of custom may be introduced.

**5. Customs and usages ⚖➡7, 8, 17—Evidence of custom cannot be used to contradict agreement of parties or to accomplish unfair or immoral construction of their contract.**

Evidence of custom is not permitted for purpose of contradicting agreements which parties have made or for purpose of accomplishing unfair or immoral construction of their contract.

**6. Customs and usages ⚖➡14—Custom may be excluded by contract.**

Parties may abrogate any custom, no matter how ancient or uniform, by contract.

**7. Customs and usages ⚖➡17—Contract may not be varied by conflicting custom.**

Whenever there is conflict between custom and contract which parties have entered into, contract must control.

**8. Insurance ⚖➡84(2)—Contract entitled insurance agents to receive commissions accruing after termination of contract on premiums outstanding at date of termination, though not then due and payable.**

Contract by which defendants were appointed insurance agents held to protect agents in right to demand and receive all commissions accruing after termination of contract on premiums outstanding at date of termination which included all commissions accruing and yet to become due and payable on account of premiums outstanding at date of termination, though such premiums were not then due and payable, but were only to become due after termination of agency contract.

**9. Insurance ⚖➡83(1)—Contract construed to render agent liable for premiums due after termination of agency from policies written prior to termination.**

Contract by which defendants were appointed insurance agents held to require them to pay to insurer all premiums on policies issued through them or their agents, including premiums accruing after termination of agency on policies issued by agents prior thereto.

**10. Customs and usages ⚖➡17—Where contract clearly fixed liability of insurance agents for premiums accruing after termination thereof, evidence of custom held inadmissible to vary contract.**

In suit by insurer against agents for unpaid compensation premiums falling due after termination of agency contract, language of contract being clear concerning liability of agent for premiums accruing after termination of agency on policies written prior thereto, no evidence of usage or custom held admissible to vary terms of contract.

**11. Insurance ⚖➡83(1)—Correspondence of insurer and agents held to show intention to hold agents liable for premiums payable after termination of agency on policies written prior thereto.**

In suit by insurer against agents for unpaid premiums, correspondence of parties held to show construction of contract making agent liable for premiums payable after termination of agency on policies written prior thereto.

**12. Evidence ⚖➡271(19)—Letter showing existence of custom varying agency contract held inadmissible, as self-serving statement.**

In suit by insurer against agent for unpaid premiums, letter showing existence of custom to vary agent's liability for premiums provided by contract held inadmissible, as self-serving statement.

**13. Appeal and error ⚖➡1175(1)—Reviewing court, on reversing, must render such judgment as lower court should have rendered, where case has been fully developed.**

Where case has been fully developed below, it is duty of reviewing court, on reversing, to render such judgment as court below should have rendered on the uncontroverted facts.

Appeal from District Court, Dallas County; Royal R. Watkins, Judge.

Action by the Continental Casualty Company against George M. Easley and others, in which defendants filed a cross-action. From a judgment against plaintiff and for defendants on their cross-action, plaintiff appeals. Reversed and rendered.

Crane & Crane, of Dallas, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, for appellees.

VAUGHAN, J. Appellant, the Continental Casualty Company, an Illinois corporation authorized to write compensation, liability, and other forms of insurance, instituted this suit in the court below to recover against appellees George M. Easley and L. F. Boulware, a copartnership, damages in the approximate sum of $3,000 for their alleged breach of an agency contract. In addition to appropriate pleas presenting appellees' defense, they alleged that not only were they not indebted to appellant, but, on the contrary, appellant was indebted to appellees in the sum of $596 on account of commissions, etc., which amount was pleaded both as an offset and in a cross-action. As the case presented by the pleadings will be developed in the discussion of the propositions before us, a statement of the pleadings will be omitted.

On a trial before the court below without a jury on the 22d day of June, 1925, judgment was rendered denying appellant the right of recovery on its cause of action, and in favor of appellees on their cross-action against appellant for $714, with interest and costs. The contract between the parties furnishing the foundation of the suit bears date January 29, 1918. Under its terms, appellees were appellant's general agent in certain defined territory "for the purpose of procuring and transmitting applications" in the following lines of insurance: Commercial, accident, and health policies, automobile liability, collision, and property damage, "writing and delivering policies thereon, collecting and paying to the company the premiums on the insurance so effected. The following provisions of the contract are material to the disposition of this appeal:

"Paragraph 8. This contract may be terminated by either party hereto, provided thirty days' notice in writing is given. In the event of such termination, or in the event of the death of the agent, there shall be due the agent in full satisfaction thereof, all accruing commissions, if any, upon premiums outstanding at date of termination."

"Paragraph 12. The agent agrees to be responsible for and pay to the company all premiums, whether advance, deposit, additional, or otherwise, on policies issued by or through him, whether through brokers, local agents, or otherwise."

"Paragraph 16. The agent shall forward to the company, not later than the 10th day of each month, an account current, in which shall appear all premiums on business written or renewed by or through said agent during the preceding month, including all premiums on pay roll statements submitted and all additional premiums disclosed by audit and reported to said agent during said month. The agent shall forward to the company, not later than the 5th day of the second following month, remittances to cover the balance due as shown by said account current."

By an addendum to said contract the lines of insurance which appellees were authorized to write were enlarged to include workmen's compensation insurance, upon which appellees were to receive a commission of 17½ per cent. On or about July 15, 1919, appellant, through appellees as its agent, issued workmen's compensation policy No. M–47583 to Staley-Green Drilling Company, of Vernon, Tex., and on or about July 17, 1919, a similar policy, No. M–47586, was likewise issued to Byars Farm Oil Company, of Vernon, Tex. The last-named policy was transferred to Staley-Green Drilling Company. At the time of the issuance of said policies, the assured thereunder paid to appellees a deposit premium payment and the sum so received was by appellees paid to appellant, less their commissions; that a deposit premium is what is termed in insurance business an "advance premium." The policies provided that the premium to be paid should be based on a certain rate of the pay roll paid by the assured to his employees during the time the policy was in force, and the amount to be paid as premium thereon to be ascertained by a monthly audit to be forwarded not later than the 10th day of each month in the form of an account current, including all premiums on pay roll statements, payment to be made not later than the 5th day of the second following month; that the amount of the premium that would be paid depended on the amount of the pay roll of the assured for each month, for which payment of premium was to be made.

Said agency contract was canceled by mutual consent of the parties thereto on the 31st day of August, 1919; that at said time the two compensation policies involved in this suit had been in force and effect from July 15 and July 17, 1919, respectively, and continued in force and effect from that date to April 1, 1920, at which time said policies were canceled; that from the 18th day of August, 1919, to the 1st day of April, 1920, certain premiums were earned each month by said policies, which premiums had not been earned prior to the 31st day of August, 1919; that, some time after the cancellation of said agency contract, the total premium earned on said two compensation policies from date, respectively, to date of cancellation, was $1,878.75 on policy No. M–47586 and $187.02 on policy No. M–47583; that after said policies were canceled in April, 1920, appellees forwarded an account for the month of April, 1920, in which said sums of $1,878.75 and $187.02 were included.

In reference to the cancellation of the agency contract, the handling of the unfinished business created by said contract, and the payment of premiums on account of said two compensation policies, the following correspondence occurred between appellant and appellees:

On August 15, 1919, appellees wrote appellant as follows:

"In this connection we beg to say that the balance due the company as per account rendered will be sent you each month as same become due. However, we realize that you have a right to demand payment of all outstanding balances, and if you prefer, we will, as soon as August account is made up, remit you for all balances due, including August. We will have some additional premiums under Workmen's compensation policies issued by us which will be coming due after August 31st, and we can, if you desire, account to the company for these premiums as they accrue. We can also account for other premiums in the regular course of business on policies issued by us, and thus avoid confusion or any other dissatisfaction."

Appellant, on August 19th, replied to appellees as follows:

"Relative to the payment by you of all outstanding balances as required by your agency contract, it gives me pleasure to advise you that the management of the Continental is entirely willing to waive this provision, with the understanding that the payments will be made at the same time and in the same manner and subject to the same conditions as though your contract were to continue in force beyond August 31st. This will mean that you will continue to send us accounts current for developed premiums and cancellations for some time after the cancellation date of the contract, and it will give us the pleasure of that much longer business relations with you."

On June 9, 1921, appellees wrote to appellant as follows:

"April account: We are unable at the present time to remit for this account, as requested in your telegram of recent date. The principal items of this account are the Staley-Green Drilling Company; there being a considerable mix-up in this account, which was originally audited by Mr. Bean up to the date of Mr. Bean's visit. However, the Continental policy has been canceled and rewritten in the Employers' Liability, and it was necessary for the auditor of the Employers' to make a reaudit of this account to establish the amount due the Continental, also that of the Employers'. We have not yet effected collection of this balance and would like to request a little more time in order that we may more properly satisfy the assured of this amount, which we feel we will be able to do within the next week or so."

To which appellees replied on June 13, 1921, as follows:

"We will extend you a little additional time on collection of the above premium, with the understanding that you will endeavor to get it into our office by the 28th of June, on which day we close our books for the examination of the insurance department. If, in your opinion, you will be unable to collect this premium by that time, advise us by wire, and we will immediately place same in the hands of our legal department with a request that they force payment."

[1] An account current is a statement by the agent in which he includes all policies written during that month and all return premiums on policies canceled during that month, and brings down his net premiums less his commission and whatever other charges or balances are due the company for the transactions during that month, regardless of whether or not the premiums were paid or collected. The latter plan was followed by appellees in making payments to appellant during the life of the agency contract. A final audit of the pay rolls showed that additional premiums were due appellant under policy No. M–47583 of $187.02 and under policy No. M–47586 of $1,878.75. These additional premiums were never paid by the assured. Accounts current were sent in by appellees after August 31, 1919. An audit made by one Bean for appellant developed that the assured under these policies owed additional premiums of $3,257.87. This amount was reported to appellant by appellees in their account current for November, 1920. It was later discovered that Bean had made an error in determining the additional premium due under one of the policies by including the premium from the time of the issuance of the policy to its expiration date, when, in fact, the policy was actually canceled in April, 1920, several months prior to the expiration date. When this error was discovered, appellees charged back to appellant the item of $3,257.87 in their January, 1921, account current. A subsequent and final audit, as above stated, developed the correct amount of the initial premiums, and appellees credited this amount to appellant and reported the correct amount to appellant in April, 1921.

It was established that appellant was due appellees, at the time of the filing of its suit, the sum of $596, which accrued and became due to appellees in the course of the relationship of principal and agent created by the contract in question, which amount was never paid by appellant, and is now a valid, outstanding demand in favor of appellees against appellant.

Suit was brought by appellant against appellees for the amount of premium accrued on account of the issuance of said compensation policies, upon the theory that appellees were liable for said sums, even though they had not been collected from the assured, and although practically all of such premiums were earned under the policies after the cancellation of the agency contract.

Appellees resisted the suit upon the theory (1) that there was no liability under the

contract for premiums earned after the cancellation of the agency contract and which had not been paid by the assured, placing upon appellees such liability; and, under the general and notorious custom of the country, there was no such liability upon the part of appellees.

This appeal is prosecuted upon propositions which challenge the action of the court in admitting certain evidence to establish the existence of a custom as pleaded by appellees, namely, the testimony of appellee George M. Easley to the effect that there was a well-known, general, notorious custom existing in Dallas and the state of Texas at the time letters were written canceling the agency contract, to the effect that, where a contract of the nature of the one involved was canceled, the agent would not be liable for premiums on policies issued through him not collected from the assured; that in case of a policy written with a deposit premium, or with a premium to be earned as the policy was in force, the agent was not held responsible for the earned premium unless he was able to collect from the assured, and the admission in evidence for the same purpose of the following part of a letter dated September 2, 1921, written by appellees to Mr. Abraham Lepine, appellant's attorney:

"It is customary in all such cases for us to credit back our agent's account where they have made every effort to collect the account but have had no success. This is the manner in which we now handle our business in every case."

The above evidence was objected to on the ground that the contract between the parties, which had theretofore been introduced in evidence, contained the following clause:

"The agent (meaning appellees) agrees to be responsible for, and pay to the company, all premiums, whether advance, deposit, additional, or otherwise, on policies issued by or through him, whether through brokers, local agents, or otherwise."

That the testimony of the witness, therefore, was clearly inadmissible, as it varied, or tended to vary, the express terms of the written contract, and, further, that the recital of the letter was in direct contravention of the terms of the contract, and therefore the court should have sustained appellant's objections to the admission of said testimony.

Unless the evidence objected to was properly admitted, the judgment of the lower court should have been in favor of appellant, for, as the case was developed by the evidence other than the evidence objected to, appellant was entitled to recover against appellees on its cause of action; and, on the other hand, if said evidence was properly admitted, the judgment of the lower court must be sustained.

[2-8] In determining whether or not the language of a written contract is ambiguous or of such doubtful meaning as to render uncertain the intent and meaning of the parties, the language employed should be given its everyday, commonly accepted meaning, which rule is applicable to the case under discussion, because, where the provisions of a written contract are clear and unambiguous, they cannot be changed or affected in meaning by proof of a custom at variance therewith. First Nat. Bank v. Lancashire Ins. Co., 62 Tex. 461. Furthermore, it is only where the court is unable to arrive at the real meaning and intention of the parties from the terms of the contract that parol evidence of a custom may be introduced. 27 R. C. L. p. 169. Where the intent and meaning of the parties is clear, evidence of usage to the contrary is irrelevant and unavailing. Standard Paint Co. v. San Antonio Hardware Co. (Tex. Civ. App.) 136 S. W. 1150; 27 R. C. L. p. 170. However, evidence of a custom is not permitted for the purpose of contradicting the agreements which the parties have made or for the purpose of accomplishing an unfair or immoral construction of their contract. Gravenhorst v. Zimmerman, 236 N. Y. 22, 139 N. E. 766, 27 A. L. R. 1465; Tilley v. County of Cook, 103 U. S. 155, 26 L. Ed. 374; Orient M. Ins. Co. v. Wright, 1 Wall. 456, 17 L. Ed. 505; North Shore, etc., Co. v. Director General of Railroads, 130 Va. 464, 108 S. E. 11; Henry v. Green Ins. Co. (Tex. Civ. App.) 103 S. W. 836; Smith v. Assur. Soc. (C. C. A.) 65 F. 765; Lowenfeld v. Curtis (C. C.) 72 F. 105; Glendale Woolen Co. v. Ins. Co., 21 Conn. 19, 54 Am. Dec. 309. In this respect the courts have never gone further than to hold that, while usage or custom cannot be admitted to vary or control the express terms of a contract, evidence thereof may be admitted to determine that which by the contract is left undetermined, and we know of no decision holding that parties cannot by contract abrogate any custom, no matter how ancient or uniform, or that the existence of such custom will abrogate the unequivocal terms of a contract. To the contrary, the general rule is, without exception, that whenever there is a conflict, the contract must control. Dixon v. Dunham, 14 Ill. 324. What natural meaning is to be gathered from the language of the contract under investigation? By the provisions of paragraph 1 thereof, appellant appointed appellees as its agents in certain defined territory for the purpose of procuring and transmitting applications in the lines of insurance specified therein, writing and delivering policies thereon, collecting and paying to appellant the premiums on the insurance so effected. By the provisions of paragraph 8 the right was reserved to either party to the contract to terminate same by the giving of 30 days' notice in writing, and, further, that in the event of such termination, or in the event of the death of the

agent, there would be due the agent in full satisfaction for his services all accruing commissions, if any, upon premiums outstanding at date of termination. This plainly protected the agent in the right to demand and receive all commissions accruing after the termination of the contract upon premiums outstanding at date of such termination. This undoubtedly included all commissions accruing and yet to become due and payable on account of premiums outstanding at date of termination, although premiums were not then due and payable, but under the terms of the policy could only become due and payable after the termination of the agency contract.

The language of the contract makes it clear that the appellees were appointed agents for appellant for the purpose of procuring and transmitting applications for insurance and for the purpose of writing and delivering policies of insurance, collecting and paying the company the premiums on the insurance so effected, and that, for such services performed, appellant became bound and obligated to pay appellees, as their compensation, certain commission upon the net premiums paid to and received by the company in cash upon business done by or through said agents.

[9, 10] Giving language its commonly accepted and understood meaning—that effect which naturally flows from its use in conveying human thought and feeling from one to another as the medium of communication for the purpose of reaching an understanding or agreement—we can only gather from section 12 a positive and unconditional agreement on the part of appellees to become responsible for, and to pay to appellant, all premiums, whether advance, deposit, additional, or otherwise, on policies issued by or through appellees, whether through brokers, local agents, or otherwise. This language will admit of no exception from liability for the payment of premiums that had accrued or would accrue after the termination of the agency contract on policies issued by appellees prior to the termination of such contract. No other consistent meaning can be gathered from the language used. This being true, it follows that no evidence of usage or custom was admissible to vary or control the express terms of the contract declared upon, for it is well understood that the parties, by their contract, had the right to abrogate any custom, no matter how general or the length of time of its duration, for custom must yield to the plain terms of the agreement when the contract is not interdicted by law. Conceding that there is a conflict between the terms of the contract and the custom pleaded and established by appellees, that conflict could be of no avail, as the contract would control. Dixon v. Dunham, supra.

[11] Even if the language of the contract rendered the meaning of same doubtful or ambiguous, the correspondence between the parties, anent the termination of that instrument and the future course to be pursued by the parties in reference to the unfinished business of the agency, clearly interpreted the meaning of its language in no uncertain terms; namely, that appellees were liable for all premiums accrued and that should accrue on policies of insurance written by appellees for the period of time for which same were issued as the agents of and for appellant, although such premiums had not been collected by appellees and could not be collected by them from the assured. The interpretation thus placed upon the language of the contract is binding upon the parties and should be followed by the court in determining the effect of said contract.

[12] Counsel for appellees contend that the part of the letter of date September 8, 1921, offered in evidence, was properly admitted for the purpose of showing the existence of the custom pleaded by appellees. This was but a self-serving statement, made by appellees in the incipient stage of the controversy between the parties that finally resulted in this litigation; therefore was not admissible for that purpose, nor for the purpose of changing the natural effect of the language employed in the correspondence between the parties on and between the dates from August 15, 1919, to June 13, 1921, herein set out. The parties had acted upon that correspondence and had adjusted their rights in reference to the termination of the agency contract in harmony with appellant's contentions, and certainly no subsequent sporadic statement made by appellees in reference to their liability for the payment of the premiums sought to be recovered in this suit could have the effect of canceling, changing, or modifying the understanding that the parties of necessity must have reached through their prior correspondence that comprehended fully the respective rights and responsibilities of the parties.

It is quite true 'that, if appellant had acceded to the contention of appellees as reflected by their letter of September 8, 1921, the parties would have occupied the position in reference to the contract as contended for by appellees; but such is not the case.

[13] The case having been fully developed, it is the duty of this court to render such judgment as the court below should have rendered on the uncontroverted facts, namely, that appellees are indebted to appellant, on account of premiums accrued on policies issued by them, in the sum of $2,102.77; that appellant is indebted to appellees in the sum of $367.98, representing 17½ per cent. commission on said sum of $2,102.77, and the further sum of $595 claimed by appellees in their cross-action against appellant, aggregating the sum of $962.98, which appellees are

entitled to have credited against said sum of $2,102.77, leaving a balance of said principal sum of $1,139.79 due appellant by appellees, with interest thereon from June 5, 1921, to this date, November 27, 1926, at the rate of 6 per cent. per annum, said interest aggregating $374.52.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be and the same is hereby reversed and here rendered in favor of appellant against appellees for the sum of $1,419.69, together with interest thereon at the rate of 6 per cent. from November 27, 1926, and all costs of this court and the trial court.

Reversed and rendered.

### On Motion for Rehearing and to Correct Judgment.

By appellant's motion for rehearing and to correct judgment, we have been directed to certain errors inadvertently made in calculating the amount for which judgment was intended to be and should have been rendered, viz. the amount claimed by appellees in their cross-assignment should have been $596, making the amount for which appellees are entitled, as a credit against the amount of $2,102.77 due to appellant, $963.98, leaving a balance of said principal sum of $1,138.79, which, with interest thereon from June 5, 1921, until November 27, 1926, viz. $374.52, aggregates the sum of $1,513.31, which amount appellant is entitled to recover against said appellees. Said motion to correct judgment is therefore granted, and the judgment heretofore entered reformed and corrected so as to award to appellant the sum of $1,513.31 against appellees, with interest thereon at the rate of 6 per cent. from November 27, 1926.

In all other respects the motion is overruled.