TRIMBLE, Indiv. and t/a Donald J. Trimble Insurance Agency *v.* COPPAGE, Rec'r for The National Motors Insurance Company

[No. 11, September Term, 1970.]

\* \* \*

THOMPSON ET AL., Indiv. and t/a Thompson Insurance Service *v.* COPPAGE, Rec'r for The National Motors Insurance Company

[No. 12, September Term, 1970.]

*Decided October 13, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Paul T. McHenry, Jr.,* for appellants.

*Joseph S. Kaufman,* with whom was *Jerome M. Asch* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

These two controversies, consolidated on appeal because they involve identical questions, were precipitated by the insolvency of The National Motors Insurance Company (National Motors) for which the appellee Coppage was appointed receiver on 9 March 1964. On that day, Coppage notified National Motors' agents, including the appellants Trimble and Thompson (the Agencies) that existing National Motors' policies had been cancelled by the receivership, and later billed the agents for full annual premiums, less commissions, on all policies in force when the receiver was appointed. When the Agencies took the position that the receiver was entitled to collect only such premiums as had been earned as of the date of the receivership, Coppage brought suit in the Circuit Court for Baltimore County. From a summary judgment in favor of Coppage for the full amount of the premiums, less commissions, the Agencies have appealed. We shall affirm.

The crux of the matter lies in the provisions of the agreement which each of the Agencies entered into with National Motors' general agent. It provided, in part:

> *"Remittance of premiums.* Agent agrees to pay General Agent all premiums accruing on insurance written under this Agreement, whether

178

or not collected by Agent from the insured. Agent shall hold and keep all premiums received by it as a Fiduciary trust for General Agent until delivered to it, and no course of dealing between Agent and General Agent shall be held to waive assertion of said trust relationship as to such premiums collected by Agent. General Agent shall render to Agent, monthly, a statement of money due General Agent on business placed by Agent with General Agent, and Agent agrees that settlement of said account shall be made on the basis of such statement, unless such statement prepared by General Agent shall be altered or amended by mutual agreement between Agent and General Agent. Agent shall pay to General Agent the balance shown to be due on such statement within sixty days after the end of the month for which such statement is rendered; i.e. premiums written in January are due and payable on or before March ............, provided that in the event of suspension, revocation or termination of the authority of Agent or of cancellation or termination of this Agreement, all accounts owing to General Agent shall become due and payable immediately."

\* \* \*

"*Termination*: This Agreement may be suspended or terminated by either party at any time by giving written notice to the other, but such suspension or termination shall not affect the liability of Agent to account to General Agent for any moneys received by Agent and which are payable to General Agent under this Agreement."

The Agencies argue, although the entry of the summary judgment denied them an opportunity to prove, that there were instances where they had extended credit to their policyholders, or were collecting premiums in installments. In such cases, they say, it would be inequitable to

permit the receiver to collect an unearned premium in full. The answer is, of course, found in the agreement, in which the Agencies undertook to pay premiums accruing on policies within 60 days of the end of the month in which the policies were written, whether or not the premiums had been collected from the insured.

A similar contention that there was no segregation of premiums collected, but that these were commingled with the general funds of the Agencies, falls in the face of the provision in the agreement that a course of dealing will not bar the assertion of the trust relationship.

In 50 Op. Att'y Gen. 262 (1965), the Honorable Thomas B. Finan, then Attorney General of Maryland and now a member of this Court, in an opinion given the State's Insurance Commissioner, concluded that "an agent has no right to claim a credit for unearned premium on policies cancelled by operation of law or otherwise through the insolvency of the insurer, but that only the affected policyholder may assert such a claim which should be filed in the receivership proceedings," relying primarily upon *Bothwell v. Employers Underwriters Agency,* 145 Md. 36, 125 A. 504 (1924) and *The American Cas. Ins. Co.'s Case,* 82 Md. 535, 34 A. 778 (1896), both of which are relied upon by the appellee.

Although the Attorney General's opinion dealt only with premiums which had been collected and held by agents, we think that the same principle is applicable to premiums which have not been collected, for the payment of which agents are responsible under the provisions of an agency agreement.

While *Bothwell* dealt with the question whether the receivers of an insolvent insurance company were entitled to collect from the company's agents commissions paid on premiums unearned when policies were cancelled by the insolvency, and held that the commissions were not collectible, it would appear to be authority for two propositions: first, that the insolvency of an insurance company effects a cancellation of its outstanding policies by operation of law; and second, that the insolvency entitles

policyholders to file a claim for premiums unearned by reason of the cancellation.

In *The American Cas. Ins. Co.'s Case*, 82 Md. at 569-70, our predecessors, speaking through Chief Judge Mc-Sherry, said:

> "Now, the insolvency of the company cancelled all outstanding policies of insurance for the future. *Doane v. M. I. Co.*, 43 N. J. Eq. 522. It is apparent that all casualties for which the various insured corporations and individuals holding the insolvent company's policies might be responsible must have happened either before or after the date of the insolvency. If the accidents, which form the basis of the claims now made for indemnity, happened *after* the insolvency was declared, then, inasmuch as the insolvency cancelled the policies, there can be no claim under the policies, but as the company by its insolvency committed a breach of its contracts, the policyholders thereupon became entitled to damages for that breach, and these damages are the values of the destroyed policies. *Mason v. Cronk*, 125 N. Y. 503; *People v. Security Life Ins. Co.*, 78 N. Y. 125. The policies being thus destroyed, of course, all liability under them, from the date of the insolvency, for accidents occurring subsequently to the insolvency, ceased, consequently losses which happened after the insolvency under policies in existence at the date of the insolvency, are not provable against the funds in the receiver's hands. Whilst this is so, the values of the destroyed policies *are* provable, and according to well-settled rules, these values consist solely of the unearned or return premium." (Emphasis in original)

Since the Agencies were bound by agreement to remit premiums to National Motors, the Maryland law is well-settled that when the policies were cancelled by the com-

pany's insolvency, the policyholders could claim against the insolvent estate for unearned premiums. The Agencies could not do so, except as assignees of the policyholders.

The appellants refer us to *Downey v. Humphreys*, 102 Cal. App.2d 323, 227 P. 2d 484 (1951)[1] and *Bohlinger v. Zanger*, 306 N. Y. App. Div. 228, 117 N.E.2d 338 (1954) in support of the proposition that unremitted and unearned premiums are not an asset of the estate of an insolvent insurer. To the same effect are *Bushnell v. Krafft*, 133 Ind. App. 474, 183 N.E.2d 340 (1962) and *Moren v. Ohio Valley Fire & Marine Ins. Co.'s Receiver*, 224 Ky. 643, 6 S.W.2d 1091 (1928). Generally, the rationale of these cases is that the business practice of the industry demands that a cancellation of a policy as a result of insolvency should be treated no differently from a cancellation effected by either the insurer or the insured.

On the other hand, other jurisdictions have concluded that unremitted and unearned premiums in the hands of an agent are an asset of the estate of the insolvent insurer on the theory that the agent who collects the premium is acting for the insurer. *Shoup v. Mayerson*, 454 P. 2d 666 (Okla. 1969) ; *Clay v. Independence Mut. Ins. Co.*, 359 S.W.2d 679 (Mo. 1962) ; *Langdeau v. Bouknight*, 162 Tex. 42, 344 S.W.2d 435 (1961) ; *Charles W. Virgin Ins. Agency, Inc. v. Alabama Gen. Ins. Co.*, 114 So. 2d 524 (Fla. Ct. App. 1959) ; *Bushnell v. Mitchell*, 160 F. Supp. 608 (S.D. Ala. 1958) ; *Bohlinger v. Kagan*, 147 F. Supp. 910 (D.R.I. 1956) ; *Maloney v. Rhode Island Ins. Co.*, 115 Cal.App.2d 238, 251 P. 2d 1027 (1953). See also Note 54 Columbia L.Rev. 638 (1954).

We regard the result reached below, although it is concededly an extension of the payment doctrine, as the better considered view. Any other conclusion would offer a reward for delinquency, giving to policyholders who had not paid their premiums an advantage over policyholders who had paid their premiums in full. It seems to us that

---

1. But compare *Maloney v. Rhode Island Ins. Co.*, 115 Cal.App.2d 238, 251 P. 2d 1027 (1953) which reached a contrary result.

Mr. Justice Brennan, while an Associate Justice of the New Jersey Supreme Court, made the point in *Bohlinger v. Ward & Co.*, 20 N. J. 331, 120 A. 2d 1 (1956) at 4:

"* * * The insurance company now being insolvent, allowance of the claimed credit would in actuality sanction a preference at the expense of other policyholders and creditors — and indeed what defendant did was done for the precise purpose of making its customers whole. It neither appears nor is it argued that defendant's conduct was infected with the taint of moral fraud, but plainly what was attempted here cannot be brought within the authority of a practice developed to facilitate the settling of accounts in the routine of the operation of a going business. See American Casualty Insurance & Security Co. v. Arrott, 180 Pa. 1, 36 A. 319 (Sup. Ct. 1897). The claims of the 150 to 160 policyholders for unearned premiums must stand with like claims of other policyholders similarly situated."

For reasons not stated in the opinion, however, the liquidator conceded that policyholders could not be held liable for unearned premiums which had not been paid at the time of the insolvency.

*Judgments affirmed, costs to be paid by appellants.*