THE TRAVELERS INDEMNITY COMPANY OF HARTFORD, CONNECTICUT AND EVERETT EUGENE BREWSTER AND ROBERT MCALLISTER v. THE STATE OF INDIANA EX REL. WINIFRED FAVRE, AS ADMINISTRATRIX OF THE ESTATE OF WALTER P. FAVRE, DECEASED AND WINIFRED FAVRE, INDIVIDUALLY AND FOR HER MINOR CHILDREN AND AS ADMINISTRATRIX OF THE ESTATE OF WALTER P. FAVRE, DECEASED.

[No. 272A105. Filed December 20, 1972.]

554

*Raymond H. Modesitt, Dix, Patrick, Ratcliffe & Adamson,* of Terre Haute, for appellant.

*John A. Kesler,* Terre Haute, for appellee.

LOWDERMILK, J.—Winifred Favre, Administratrix of the estate of Walter P. Favre, deceased, filed her action against Everett Brewster ("Brewster"), Constable of Sugar Creek Township in Vigo County, Indiana, and Robert McAllister ("McAllister"), as defendants. Defendants were defaulted and a judgment awarded to plaintiff after the trial court heard the evidence as to the amount of damages.

Defendants' motion for a new trial was granted, but the decision was reversed by this court in *Favre* v. *Brewster* (1966), 139 Ind. App. 156, 217 N.E.2d 592.

Demand was made upon Travelers Indemnity Company of Hartford, Connecticut ("Travelers") for the judgment in Favre's action on an official constable's bond in which Travelers was surety for Brewster.

The present action was filed against Travelers to enforce liability on the bond it had issued on Brewster, constable. The complaint was in two Paragraphs, with the first alleging the judgment hereinbefore referred to and the second Paragraph was for the recovery of the $8,000.00 principle of the bond for the alleged wrongful killing of Favre by McAllister, acting both for himself individually and on behalf of and at the direction of Brewster.

Plaintiff-appellee recovered judgment on the bond in the amount of $8,000.00, after which Travelers timely filed its motion to correct errors, which motion was overruled, with this appeal following.

On July 4, 1959, Brewster (now deceased) was the duly appointed Constable of Sugar Creek Township in Vigo County, Indiana, where Favre's death occurred. At this time, there was in full force and effect an official bond on Brewster upon which Travelers was surety. The condition of this bond was that Brewster shall faithfully perform and discharge his duties as constable. Among official constabulary duties was the duty to arrest all persons breaching the peace in his presence and he had the legal right to call on other persons to assist him in carrying out such official duties.

On this date, Brewster went to the home of McAllister, who believed or pretended to believe he was a special deputy sheriff of Vigo County (official records showed that he was not a special deputy on this date) and solicited McAllister's assistance in making an arrest. McAllister often assisted Brewster in making arrests, particularly for traffic violations. Brewster and McAllister, both armed, got into Brewster's car and drove after Charles Howell, who was engaged in an automobile race with another person in the town of Dresser. Brewster and McAllister pursued Howell to Hack Brown's Tavern in Dresser, where Howell stopped his car and ran behind the tavern. Walter Favre was in the tavern and came out and started arguing with Brewster, and interfered with the arrest of Charles Howell, who the officers were pursuing. Both Brewster and McAllister had gotten out of the car and were standing at the side of the tavern. Brewster started to pull his gun, Walter Favre grabbed his arm and while they were wrestling for the gun it was discharged in the air.

Favre then got possession of Brewster's gun and was holding it in his hand with the muzzle pointed toward the ground and at that time Brewster said to McAllister "Let him have it." McAllister started shooting; several bullets went

into the wall of Brown's tavern and three bullets struck Favre in the chest mortally wounding him.

At the close of plaintiffs' evidence the court directed the verdict as to the first Paragraph of complaint and the cause was continued to the jury on the second Paragraph, and concluded by the jury returning its verdict for $8,000.00 against Travelers.

Brewster was dead prior to the trial of this cause; he had left no estate, and McAllister had nothing on which to levy.

Travelers denied liability on the bond and contend there was no agency relationship between Brewster and McAllister.

The first issue is whether the verdict was supported by sufficient evidence to establish an agency relationship between Constable Brewster and his special deputized constable, McAllister. Appellant Travelers contends that McAllister was a duly appointed deputy sheriff in Vigo County on July 4, 1959, and was appointed for the purpose of arresting traffic violators, among other normal duties of the deputy sheriff of said County, and in particular of the Dresser area, which is a part of West Terre Haute, and further contends that at the time of the shooting on July 4, 1959, McAllister was not an agent of defendant Brewster. Appellant Travelers insists the burden of proving agency rested on Favre, the plaintiff herein. For support of this contention they cite the case of *W. H. Barber Co.* v. *Hughes* (1945), 223 Ind. 570, 63 N.E.2d 417, which confirms their contention, and says:

> "This seems to be true under general principles of agency which require the consent of agent to give effect to his appointment."

Appellant Travelers submits there is no evidence which would even infer that the requisite elements of "consent" and for "intention" were shown to exist between McAllister and Brewster. With this contention of appellant, Travelers, we cannot agree. The record is that Brewster was attempting to control traffic in Dresser and was chasing with his automobile

two traffic violators who were in the act of racing. He needed help and stopped at the home of Mr. McAllister, who was there with his family watching television when informed that his help was needed. Brewster told him he wanted him to go along and that he said he would go that time and help him, but was going to quit helping in this kind of work.

Appellant Travelers attemps to confuse the issues by showing that McAllister had been a special deputy sheriff under a preceding administration for the purpose of operating in Dresser and that he was still continuing in his line of duty as a deputy sheriff merely because he did not know that when the term of his principal expired that he was no longer a deputy sheriff. The record is clear that the new sheriff, Herbert Beasley, did not appoint McAllister a special deputy for Dresser in the year of 1959 and he, therefore, upon accepting the bid to assist Brewster accepted it as an appointment of a special constable as was his duty under the law.

Burns § 49-3407 (1964 Repl.) provides that constables in the discharge of their duties shall have the power throughout their respective counties, unless specially restrained by law, and whenever necessary, may call upon any number of citizens to assist them in the discharge of their duties, who shall not refuse such assistance, under such penalty as may be prescribed by the criminal law.

Burns § 10-1006 Refusing to aid officer.—provides that

". . . when required by any . . . constable, or any conservator of the peace, to assist him in the execution of his office or in the service of any process, shall refuse or neglect to render such assistance, without having a valid cause for so refusing or neglecting, shall, on conviction, be fined not less than five dollars [$5.00] nor more than one hundred dollars [$100]."

Defendant Travelers insists that the constable had to call on Mr. McAllister as a private citizen and that was not done as Mr. McAllister thought he was calling on him as deputy

sheriff and so testified that he thought he was a deputy sheriff and had made arrests the year of 1959.

It is immaterial to the issues in this cause as to whether McAllister thought he was a deputy sheriff or not. The truth is and the evidence shows that he was a resident of Dresser, that Mr. Brewster was duly appointed constable, and selected McAllister as a citizen to assist him in making arrests of one Charles Howell and the person with whom he was racing, if possible.

In *Department of Treasury* v. *Ice Service, Inc.* (1942), 220 Ind. 64, 41 N.E.2d 201, the court said:

> "The agency relationship arises from the consent of the parties, out of a contractual agreement between the parties, but it is not necessary that the contract or the authority of the agent to act be in writing.
>
> "The question of whether the agency exists *is ordinarily a question of fact which may be established as any other fact, either by direct or by circumstantial evidence. Jasper County Farms Company* v. *Holden* (1923), 79 Ind. App. 214, 137 N.E. 618." (Our emphasis.)

In *Metzger* v. *Huntington, Trustee* (1894), 139 Ind. 501, 519, 37 N.E. 1084, the court said on petition for rehearing:

> "Agency is a conclusion of fact, to be established by direct proof or by the attendant circumstances. [Cases cited omitted.]"

In the case of *The Indiana, Bloomington and Western Railway* v. *Adamson, et al.* (1887), 114 Ind. 282, 290, the court said:

> "The relation of principal and agent may be established by circumstantial evidence . . ."

From the evidence presented by the record we are of the opinion that the plaintiff sustained her burden of proof and showed sufficient evidence to establish the relationship of principal and agent.

Appellant Travelers next contends that if an agency relationship did exist, then the evidence shows only that it was for the purpose of making traffic arrests only and made McAllister a special and not a general agent.

Travelers further contends the principal, Brewster, is not bound by any acts of McAllister as special agent which exceed the limits of McAllister's authority. Travelers further argues the shooting of Favre was done outside the course and scope of the agency relationship and therefore, Brewster and Travelers, as surety on Brewster's bond, is not liable for damages.

Travelers further argues that the fact that McAllister was engaged in an official mission within the scope of the agency (arresting Howell for a traffic offense) and the shooting of Favre was a substantial deviation from that agency and thereby eliminated Brewster from liability.

To this contention Favre responds that the distinction between general and special agency is relevant only in the context of third party reliance on an agent's attempt to bind his principal without actual authority which is not relevant in this cause.

Favre contends Brewster and McAllister acted together throughout the incident; that there was evidence that McAllister acted at Brewster's express command and there was no evidence that McAllister acted for reasons other than those growing out of the agency relationship.

Travelers answers Favre's argument with the contention there is a distinction between general and special agency in cases other than third party reliance situations and also that the statute authorizing Brewster to obtain citizens to assist him (§ 49-3407) permits the appointment of only a special and not a general agent.

It is our opinion that under said Burns § 49-3407, when Brewster requested McAllister to go with him to assist in the discharge of his duties which were at that time in the

apprehension of persons violating the speed laws in Dresser, he made McAllister a special deputy to act as a deputy constable.

Appellant Travelers next contends it is not liable on the official bond because at the time of the shooting Brewster and McAllister were not engaged in the performance of official duties; that at the time of the shooting Brewster and McAllister were talking, arguing, or fighting with Walter Favre in their individual capacities as private persons and not as a part of the performance of their official duties.

In support of this contention appellant Travelers cites the case of *Hawkins* v. *Thomas* (1891), 3 Ind. App. 399, 27 N.E. 157 in which case the court says:

"That a surety upon an official bond is only answerable for the acts of his principal while engaged in the performance of some duty imposed upon him by law is generally admitted. [Many cases cited are omitted.]"

Further, in the *Hawkins* case, the court said:

"It was an instance of *exceeded* rather than *usurped* power. Such acts are within the express line of the sureties undertaking—that his principal shall faithfully discharge the duties of his office according to law. But where an officer, though he assumes to act as such, commits a wrong under circumstances where the law does not impose upon him any duty to act at all, the wrong is not a violation of any *official duty,* and consequently is not embraced within the sponsorship of the surety."

The court further said:

"It follows as a logical sequence that in an action upon an official bond it is necessary to allege and prove the existence of conditions and circumstances requiring some official action on the part of the officer, and that the injury sought to be redressed was inflicted while the officer was so attempting to act, or on account of his failure to act at all."

Favre contends in response to the distinction between official acts and acts of officials as in *Hawkins, supra,* is no

longer a valid distinction of the law in Indiana and that it is now that when a wrongful act is done by a public officer, acting as such, he is liable to the person injured on his official bond. She further argues that Favre's death would not have occurred if Brewster and McAllister had not been public officials acting as such which is sufficient to impose liability on appellant Travelers.

Appellee Favre relies upon and cites the case of *State* v. *Walford* (1894), 11 Ind. App. 392, 39 N.E. 162. In this case the constable went to arrest one Ed Thomas, pursuant to a warrant commanding his arrest and that he did, under color of his office, undertake to execute said warrant and make the arrest; in executing said warrant he did "carelessly, negligently, and intentionally, without cause or reason, and without any notice to said Thomas that he was an officer or had a warrant or authority to make arrests, and without any warning to said Thomas, with a pistol loaded with powder and ball, did shoot, wound and injure the said Thomas, and from which injuries the said Thomas subsequently died."

This court held:

". . . An act done by virtue of an office is one within the authority of the officer. If in doing such act the officer exercises that authority improperly or abuses the confidence which the law reposes in him, he will be liable for the injury done. An act done by color of an office is one of such nature and character that the office gives the officer no authority to do. The authorities are all agreed that if a wrongful act be done by virtue of the office, the officer and his sureties will be liable on his official bond. [Cases cited omitted.]
". . . In this State, however, it is settled that a public officer and his sureties are liable upon his official bond for wrongful acts done by color of his office as well as by virtue of his office. [Cases cited omitted.]
"This being true, the nice distinctions which prevail in some jurisdictions between acts done *virtute officii* and acts done *colore officii* do not maintain in this State. It follows that when a wrongful act is done by a public officer acting as such, he will be liable to the person injured, on his official bond."

In the case of *Tucker* v. *State, ex rel.* (1904), 163 Ind. 403, 412, the court said:

". . . If his acts in this respect were not strictly by virtue of his office, they were done at least by color of his office, and a public officer and his sureties are liable upon his official bond for wrongful acts done by color of his office as well as for those done by virtue of his office. *State, ex rel.* v. *Walford* (1894), 11 Ind. App. 392."

In the case of *State ex rel. McPherson* v. *Beckner* (1892), 132 Ind. 371, the court said, at page 374:

". . . But when the officer is acting *virtute officii,* the authorities all agree that a suit will lie upon his bond . . .
"It necessarily follows that if the constable in the case under consideration was guilty of unlawful conduct in the discharge of his official duties, to the injury of the relatrix, he and his surety must repond in damages, . . ."

60 A.L.R. 2d 893, III. Liability of bondsman or surety, § 6. Generally . . . at page 894:

"It has become a general rule, adaptable as needed to the limitations of a particular state with respect to the nature of a specified act as an official one, that under a bond of a peace officer broad enough to assure the faithful performance of his duties, his surety is civilly liable for the negligent killing of or injury to any person toward whom the officer was bound to use care, of whatever degree, where the wrongful act arises in the course of the performance of a duty of his office, either *colore officii,* or (where it is required) *virtute officii.*"

In *Towle* v. *Matheus* (1900), 130 Cal. 574, 62 P. 1064, the court in a case where a constable and a deputy constable arrested a man for the commission of a misdemeanor in their view and the constable struck him over the head and the deputy constable shot him in the back, said this force was more than necessary and the arresting officers acted wrongfully and negligently.

The court, speaking further, said:

". . . The court then finds 'that by reason of the wrongful and negligent acts of defendant Matheus, as such constable, and said Mathews, as such deputy constable, in using such excessive and unnecessary force in striking and shooting said plaintiff, * * * the condition of the bond mentioned in the complaint was broken,' etc."

Travelers contends that it is not liable on the bond from McAllister's acts as Brewster's special assistant, as Brewster used due care in the selection of McAllister as his assistant and for authority rely on the *Hawkins* case, *supra,* and the further contention that there is no statute expressly imposing such liability in Indiana. We must agree with their further contention that there is no evidence that Brewster was negligent in his selection of McAllister.

Considering the evidence most favorable to the appellee, the evidence was that Constable Brewster and his special deputy, McAllister, were at all times from the time they left McAllister's home in the process of attempting to apprehend and arrest one Charles Howell for a traffic violation. The decedent, Favre, came out of Hack Brown's Tavern and interfered with the officers in the performance of their duties. The fight ensued and while Favre was standing there beside the building with Brewster's gun broken down and pointed toward the ground, Brewster, who saw that McAllister had his gun drawn, said "Let him have it." McAllister shot Favre three times and from which gunshot wounds he died almost immediately. There is no evidence that these officers had discontinued their pursuit of the said Charles Howell or that they had ceased to act in their proper authority as peace officers.

It is our opinion that the *Hawkins* case, *supra,* does not apply here for the reason that McAllister was duly deputized by the bonded constable and the bonded constable, Brewster, ordered and directed his special deputy to "Let him have it."

For this court to hold otherwise would license any sheriff or constable to appoint a deputy or special deputy to do

unconscionable things and for which there would be no liability attached to the principal.

In *State ex rel. Penrod* v. *French* (1943), 222 Ind. 145, the court, in speaking of the tests on this matter said:

". . . 'If he assumed to act as an officer—whether under valid or void process, or under no process whatever—bondsmen should be held, as he is held, for they are the sponsors of his integrity as an officer while acting as such. They should not be absolved from liability for reasons which if carried to their logical extreme would make them responsible only for legal or authorized acts (where of course there is no liability) and excuse them from liability where acts are in excess of or apart from his authority—the very acts which they are supposed to assure against and which constitute the only logical contingency for entering upon their obligation as sureties. . . .'"

For the above and foregoing reasons this court is of the opinion that the court did not err as claimed by appellant Travelers' specifications of error numbered 1, 2, 3, and 4.

The second issue claimed uncorrected error of law during the trial in admission of evidence in the form of exhibits which resulted in prejudicial and reversible error.

Under this issue Travelers discusses specifications of error 8 and 9. Its contention is, in specification 8, that during the examination of plaintiff-Administratrix her attorney offered into evidence Exhibit 2, which was a judgment for the wrongful death of Mr. Favre against Brewster and McAllister in the amount of $27,500.00. This exhibit was admitted into evidence over Travelers' objection.

That at the conclusion of plaintiff's case and prior to her resting, she offered into evidence plaintiff's Exhibit 3 which was the complaint for damages against Mr. Brewster and Mr. McAllister and on which plaintiff recovered said judgment. Travelers objected on the grounds that the complaint had no relevancy to the cause of action at bar, that the same was a default judgment and the judgment was not on the merits of the case, and also objected to plaintiff's Exhibit 5, offered

by plaintiff in her evidence in chief, which was a letter from plaintiff's attorney to Travelers demanding payment.

The trial court, at the close of plaintiff's evidence in chief in the case at bar, directed a verdict for Travelers as to legal Paragraph I of complaint, and admonished the jury not to consider any of the evidence pertaining to said legal Paragraph I.

The jury having been instructed not to consider any evidence introduced, there is a presumption that they did not so consider any of the same and if it were error to have permitted the exhibits into evidence, the error was made harmless by said instruction, the same being court's Final Instruction No. 1 (hereinafter set out in this opinion.)

Travelers' specification 9 alludes to said plaintiff's Exhibits 2, 3 and 5 in the case against Brewster and McAllister and presents nothing to this court which was not presented in specification 8, and in this court's opinion when the trial court instructed the jury not to consider any of the evidence pertaining to the first legal Paragraph of the complaint, to which said objections are directed, if error had been committed it was made harmless.

The third issue in this appeal is whether the trial court erred in the giving and refusing of certain instructions. Travelers discusses jointly in their brief specifications of error 5, 6 and 7, and we shall treat them together in this opinion. However, we note that specification 5 charges uncorrected error of law in the court's refusing to give defendant's Instructions numbered 4, 6, 8, and 9. In their brief, Travelers argues only the refusal to give defendant's Instruction No. 6, and thus has waived the court's refusal to give defendant's Instructions 4, 8 and 9. Rule AP. 8.3 (A) (7).

Specification 6 charges uncorrected error of law in the giving of plaintiff's Instructions numbered 2, 4, 5, 6, 7, and

9. In defendant's brief Travelers set out and argue only plaintiff's Instructions 2, 4, and 7, thus waiving the giving of plaintiff's Instructions 5, 6, and 9.

Travelers' Instruction No. 6 is in the words and figures as follows, to-wit:

### "DEFENDANT'S INSTRUCTION NUMBER 6

"A person may be held responsible for civil liability for a criminal act committed by his agent only if the act had been authorized by the person prior to its commission, ratified after its commission, or committed within the scope of the agent's authority or employment. If you find that Robt. McAllister, at the time of the shooting, exceeded his authority as an agent of Brewster, if in fact he was an agent, you must find for Deft."

We are of the opinion the act of shooting by McAllister was authorized by Brewster, the duly appointed and qualified constable, who had legally made McAllister his deputy to assist in the arrest of traffic offenders and they were still in the act of attempting to arrest a traffic offender, Charles Howell, when Brewster gave the order "Let him have it." and the refusal to give said Instruction No. 6 was correct.

Plaintiff's Instruction No. 2 reads as follows, to-wit:

### "PLAINTIFF INSTRUCTION NO. 2

"It is not necessary that Constable Everett Brewster personally fired the shot that killed Walter Favre in order for Travelers Indemnity Company to be liable on their Official Bond. If you find that wrongful acts of Constable Brewster and another person he called upon to help him united in causing the injury sued upon in this case then and in that event they are both severally liable and the injured party can enforce liability against them jointly or severally. And if you find that the Constable Brewster is liable then you may find that his surety is also liable, that is to say, the Travelers Indemnity Company."

Plaintiff's Instruction No. 4 reads as follows:

## "PLAINTIFF INSTRUCTION 4

"If you find that Walter Favre was shot and killed at the time and place alleged in the complaint intentionally, maliciously, and without authority, right, or provocation, either personally by Constable Brewster while in the performance of his official dutys, [sic] or by Robert McAllister at the direction and instigation of Constable Brewster while in the performance of his official dutys, [sic] then and in that event or either of said events such would be sufficient for you to conclude that the condition of the bond was breached, and that in fact Constable Brewster had not faithfully performed and properly discharged the duties imposed upon him by the law which he was obliged to do under the terms of the bond."

Plaintiff's Instruction No. 7 reads as follows:

## "PLAINTIFF INSTRUCTION 7

"Whatever is a breach of the bond by Constable Brewster is equally so as to the surety Travelers Indemnity Company. In other words, if you find that Constable Brewster did not properly perform his constabulary duties but rather did act wrongfully in performing his duties to the injury of the Plaintiff, the defendant Travelers Indemnity Company would be liable to the Plaintiff on Constable Brewster's bond."

Travelers timely and properly filed written objections to each of said numbered instructions, as follows:

"Defendant Travelers objects to Plaintiffs' Instruction No. 2, for the reason that the instruction fails to include the requisite elements of agency, and for the further reason that the instruction informs the jury that they may find against Travelers and Brewster without setting forth the reasons for finding against Brewster by acts and conduct of McAllister."

"Defendant Travelers Insurance Company objects to Plaintiffs' Instruction No. 4, for the following reasons. The law stated therein is contrary to the laws of the State of Indiana, both case law and statutory law. Number two, that an intentional malicious act done without authority, right or provocation clearly falls outside the scope of authority of an agent, and the instruction informs the jury

that if said act is done in the manner afore-described, then the jury may conclude that the bond in question was breached. Three, the defendant further objects to Plaintiffs' Instruction 4 for the reason that the instruction fails to give the requisite elements of the conditions of the bond upon which to form a conclusion that said bond was breached. Four, that the defendant objects to said instruction for the reason that the acts if true, as stated in Plaintiffs' Instruction 4, would clearly fall outside the scope of coverage of the Travelers bond, and the jury could not return a verdict against Travelers."

"Defendant Travelers objects to Plaintiff's Instruction No. 7, for the reason that said instruction is a mandatory instruction and fails to include all the requisite elements of liability in findings which the jury must make. Further reason, that instruction invades the province of the jury in determining what types of conduct the bond liability will extend to, which is the point of controversy in this matter."

It is our opinion that the objections to Instructions 2 and 4 are untenable for the reason that the instructions given the jury as a whole properly and adequately advised the jury as to the requisite elements of agency and the general scope of the authority of an agent and the requisite conditions of a bond upon which the jury may form a conclusion that said bond was breached.

We are of the further opinion that Travelers' objection to plaintiff's Tendered Instruction No. 7 for the reason said instruction is mandatory and fails to include all the requisite elements of liability in findings which the jury must make and further invades the province of the jury in determining what types of conduct the bond liability would extend to is not well taken.

In the case of *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N.E.2d 923, our Supreme Court said:

"... A mandatory instruction is one in which there is an attempt to set out certain facts upon which the jury is directed to reach a certain result.

\* \* \*

"Instructions which are mandatory in character, which attempt to set up a factual situation directing the jury to

a certain result, are to be distinguished from instructions which merely state propositions of law without incorporating a factual situation, as for example telling the jury that if contributory negligence exists, the plaintiff is not entitled to recover. . . ."

Plaintiff's Tendered Instruction No. 7 does not set up a detailed factual situation and then instruct the jury they must come to a certain result, either for or against the plaintiff. This instruction, in our opinion, is not to be condemned on the ground that it falls within the category of mandatory instructions which attempt to set out detailed factual situations.

Appellant complains of court's Final Instruction No. 1, which is in the words and figures as follows, to-wit:

"COURT'S FINAL INSTRUCTION NO. 1

"This lawsuit was brought by the Plaintiff, Winifred Favre, as Administratrix of the estate of Walter P. Favre, deceased, in two legal paragraphs of complaint. Paragraph one of said complaint has been withdrawn from your consideration by the Court in its instruction to you to return a directed verdict. This paragraph was the paragraph of plaintiff's complaint praying for a verdict against the defendant, Travelers Indemnity Company, based solely upon a judgment returned in Cause No. 36921 in the Superior Court of Vigo County No. Two. Since the Court on its own authority has removed this paragraph from your consideration, you need not concern yourselves with evidence introduced which pertained solely to that suit and judgment therein.

"The remaining issues for your consideration, which the plaintiff has the burden of proving by a preponderance of the evidence are:

"1. That Robert McAllister, acting both for himself individually and also on behalf of and at the dirCetion and supervision of the defendant, Everett Eugene Brewster, as an official Constable of Sugar Creek Township, Vigo County, Indiana, did shoot and kill plaintiff's decedent, Walter P. Favre.

"2. That said killing was without authority, right or provocation and was done in the improper and negligent discharge of official constabulary duties.

"3. That the defendant, Travelers Indemnity Company, maintained a constable bond covering Everett Eugene Brewster in the sum of $8,000.00, and that said bond was for the benefit of persons concerned or aggrieved by the improper discharge of the constabulary duties of the Constable of Sugar Creek Township, Vigo County, Indiana by Everett Eugene Brewster.

"4. That if the said killing was wrongful, that the plaintiff was damaged thereby and that said wrongful conduct did violate and breach the conditions of the bond, which would subject the Travelers Indemnity Company to liability as surety thereon.

"If you find from a consideration of all the evidence that these propositions have been proved, then your verdict should be for the plaintiff. However, if you find from a consideration of all the evidence that any of these propositions have not been proved, then your verdict should be for the defendant, Travelers Indemnity Company."

The first paragraph of Instruction No. 1 has been discussed in this opinion in the matter of plaintiff's Exhibits 2, 3, and 5. The first paragraph informs the jury that the court has removed legal Paragraph I from their consideration. No complaint is made by appellants as to paragraph one and it shall not be discussed further.

Appellant Travelers' written objection to the court's Final Instruction No. 1 is in the words and figures as follows, to-wit:

"Defendant Travelers Insurance Company objects to the Court's final Instruction No. 1, in that paragraph one thereof instructs the jury that Robert McAllister may be acting both for himself individually and on behalf of and at the direction of Mr. Brewster, which are inconsistent forms of conduct, and for the further reason that if in fact Mr. McAllister was acting for himself individually there would certainly be no coverage on the bond in question nor would it establish the agency relationship attempted to be shown by the plaintiff."

Appellant's objection is that the instruction tells the jury that McAllister may be acting both for himself individually and on behalf of and at the direction of Brewster, which ap-

pellant claims are inconsistent forms of conduct and that if, in fact, McAllister was acting for himself individually there could be no liability on the bond and no agency relationship established.

The complaint alleges that McAllister was acting both for himself individually and on behalf of and at the direction of Constable Brewster. In our opinion, the draftsman of that complaint went further than need be in alleging that McAllister was "acting both for himself individually and on behalf of and at the direction of Mr. Brewster" and that all that was necessary was that Mr. McAllister was acting on behalf of and at the direction of Mr. Brewster. Had plaintiff-appellee not alleged McAllister was acting individually, then Favre could have been prejudiced by the giving of the instruction. As the instruction stands now, Travelers could not be prejudiced by placing the obligation of additional proof on the plaintiff before plaintiff Favre could recover against Travelers.

It is a well settled principle of law that instructions are to be construed in conformity with one another and as a whole and not individually.

Defendant's Tendered Instruction No. 7, which the court gave, reads as follows, to-wit:

## "DEFENDANT'S INSTRUCTION NUMBER 7

"The Court instructs you that if you find from a preponderance of the evidence that Robert McAllister shot and killed Walter P. Favre and at the time of said shooting was not under the control, direction or supervision of Everett Eugene Brewster, and if you find that at the time of said shooting Robert McAllister was acting in his individual capacity, then you must find for Traveler's Indemnity Company."

Said defendant's instruction clearly and adequately informs the jury that if McAllister was not under the control, direction or supervision of Constable Brewster when he shot Favre and at the time of the shooting McAllister was acting in his individual capacity, then Travelers would not be liable

and the jury must find for Travelers because there was a failure to prove agency.

Court's said Final Instruction No. 1 instructs the jury that if there was a dual relationship pertaining to McAllister as shown by a preponderance of the evidence, that nevertheless Travelers would be liable on the agency relationship. In other words, said instructions, taken as a whole, did inform the jury that in case the jury found a dual relationship Travelers would be responsible and further informed and advised the jury that McAllister must be acting under the control, direction and supervision of Constable Brewster before there would be liability placed on Travelers.

Travelers cites *Harper* v. *James* (1965), 246 Ind. 131, 203 N.E.2d 531 to sustain its contention that the classifications of conduct are mutually repugnant and inconsistent and was erroneous in that it would allow recovery by Favre against Travelers for an individual act performed outside the course and scope of the purported agency.

In *Harper* v. *James* the jury was instructed that the plaintiff had the burden to prove by a preponderance of all the evidence all the material allegations of her complaint and also to prove by a preponderance of all the evidence facts showing that the alleged misconduct of the defendant was the *sole proximate cause* of the collision, et cetera; and the failure in that particular on the part of the plaintiff is fatal to her recovery and the jury should find for the defendant. Our Supreme Court reversed and stated that the instruction was erroneous because it imposed a burden upon the plaintiff-appellant of proving the absence of contributory negligence.

In our opinion the *Harper* case is not in point as claimed by Travelers. The court in *Harper* further said that the error could not be rendered harmless by the giving of other instructions which state the law correctly and cited from *Fowler* v. *Wallace* (1892), 131 Ind. 347, 355-356, 31 N.E. 53, the following:

" '. . . It is an elementary principle of procedure that the court can not by contradictory instructions leave to the jury the duty of determining which of the two lines of instructions shall be followed, or what rule of law shall control the case. The law must come from the court, and be so declared that the jury can follow it without confusion.' "

It is our opinion that court's Final Instruction No. 1 was not contradictory and did not leave to the jury which of two lines of instructions the jury should follow or what rule of law shall control the case. And, further, the correct law came from the court and was so declared that the jury could follow it without confusion and the jury was properly directed.

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 290 N.E.2d 456.