LEO WALLACE, INDIV. AND T/A LEO WALLACE INSURANCE AGENCY *v.* THOMAS J. HATEM, REC'R OF THE NATIONAL GUILD INSURANCE COMPANY AND REC'R OF NATIONAL INSURANCE UNDERWRITERS, INC.

[No. 168, September Term, 1975.]

*Decided December 1, 1975.*

The cause was argued before MORTON, MENCHINE and MASON, JJ.:

*A. Jerome Diener,* with whom were *A. David Gomborov* and *Gomborov, Steinberg & Schlachman* on the brief, for appellant.

*John J. Sweeney, Jr.,* for appellee.

MENCHINE, J., delivered the opinion of the Court.

Newton I. Steers, Jr., Insurance Commissioner of Maryland, as Receiver of the National Guild Insurance Company and National Insurance Underwriters, Inc. (receiver), appellee, filed suit in the Superior Court of Baltimore City against Leo Wallace individually and T/A Leo Wallace Insurance Agency (agent), appellant, seeking to collect unpaid premiums in full for insurance policies issued by National Guild Insurance Company (insurer) that had been sold by agent. Prior to trial Thomas J. Hatem, as successor Insurance Commissioner, was substituted as. receiver of the two corporations.

Appellee receiver claimed to be entitled to unpaid premiums on policies issued by agent, even though the premiums never had been collected by him, because of the following provisions of an agency agreement executed by agent and insurer, to wit:

> "2. The agent *shall, unless specifically otherwise directed in writing, collect all premiums on business written for and accepted by the Company* and shall transmit such premiums to the Company on a daily basis. All premiums received by the agent shall be held by the agent as trustee for the Company. The keeping of an account with the agent on the Company's books, as a creditor or debtor

account, is only a record memorandum of business transacted, and neither such keeping of account, nor alteration in compensation rate, nor failure to enforce prompt remittance or compromise or settlement or declaration of balance of account shall be held to waive the understanding that the premiums collected by the agent are trust funds or change the character of such premiums." (Emphasis added.)

The agent agreement also provided:

"This Agency Agreement is to be effected through National Insurance Underwriters Inc., 7835 Eastern Avenue, Silver Spring, Maryland, through whom all communications relating thereto shall be transmitted."

All subsequent accounting procedures had been carried on between agent and National Insurance Underwriters Inc. The receivership included both corporations and no contention is made that the issue before us requires separate rather than joint resolution.

The cause had, in the first instance, been submitted to a special master who recommended entry of judgment for agent for costs. After exceptions to the master's report had been taken, the case was submitted to Judge Solomon Liss, without the aid of a jury. All evidence that had been submitted to and considered by the master was submitted to the trial judge, who also heard additional testimony. He rejected the recommendation of the master and extended judgment in favor of the receiver.

It is agreed by the parties that at the time of insolvency there were unpaid premiums on policies written by agent totalling $9,029.57, of which $6,710.42 was represented by policies issued to one Applefeld and $2,319.15 was represented by policies issued to other insureds.

Agent appellant disputes liability for the entire claim but alternatively contends that in any case there is no liability attaching to him in connection with the premiums owed on the Applefeld policies.

*Trimble v. Coppage,* 259 Md. 176, 269 A. 2d 563 (1970) is plain authority for these propositions:

> 1. That unremitted and unearned premiums in the hands of an agent are assets of the estate of an insolvent insurer (p. 181 [566]); and
>
> 2. That an agent is liable to the receiver for uncollected premiums as to which credit had been extended by the agent, if responsibility for their payment had been undertaken by the agent under the provisions of his agency agreement (p. 179 [564]). In that case the agent was held liable to the receiver for such uncollected credit premiums.

Agent appellant suggests, however, that *Trimble, supra,* is distinguishable because the agency agreement in that case contained the specific language "Agent agree[d] to pay General Agent all premiums accruing on insurance written under this Agreement, whether or not collected by Agent from the insured." Comparing that language with the language of the subject agency agreement as heretofore recited, agent contends that he did not undertake to assure payment to the insurer of premium payments for which credit had been extended. He argues, in sum, that the language of the agency agreement obligated him to transmit to the insurer only those premiums *collected* by him without any assumption of personal responsibility to insurer for payment of premiums for which credit had been extended.

In *Eagle Ins. Co. v. Albright,* 474 P. 2d 920 (Wash. App. 1970) insurer and agent had entered into an agency agreement that in pertinent part read as follows:

> "(1) Agent has full power and authority to receive and accept proposals for insurance covering such classes of risks as the Company may, from time to time, authorize to be insured; to collect, receive and receipt for premiums on insurance tendered by the Agent to and accepted by the Company and to retain out of premiums so collected, as full compensation on business so

placed with the Company, commissions as may be from time to time mutually agreed upon." (p. 923)

In positing the question before it, the court said:

"The central issue of this case is the question of defendant's liability for uncollected and unremitted premiums. A resolution of this question depends on interpretation of the agreement between the parties. The trial court did not think there was any ambiguity in the agreement and refused to give the defendant's proposed instruction No. 5, which instructed the jury that the agreement was ambiguous. Instead, the court gave instruction No. 8, [1] advising the jury, in effect, that defendant was liable for all premiums, whether or not collected from subagents or assureds.

\* \* \*

"We think that there was no error in the trial court's action regarding these instructions on ambiguity. This is true even if it is conceded that the written agency agreement in question in this case is less than a model of clarity." (p. 927)

The evidence in *Albright, supra,* included a showing that by the accounting practice of both parties the entire amount of the premium, collected or not, was shown as the amount owing from agent to insurer.

In the subject case the same accounting practice was followed. Norman Davis, Treasurer and Office Manager of both insolvent corporations, testified that a detailed account current was issued to the agent each month, listing all transactions for that month.

*Continental Casualty Co. v. Easley,* 290 S. W. 251 (Tex. Civ. App. 1926) at page 253 said:

"An account current is a statement by the agent

---

[1]. "[B]y instruction No. 8, the court, in effect, instructed the jury that the agency agreement created a debtor-creditor relationship with regard to premiums, whether collected or not." (p. 925)

in which he includes all policies written during that month and all return premiums on policies canceled during that month, and brings down his net premiums less his commission and whatever other charges or balances are due the company for the transactions during that month, regardless of whether or not the premiums were paid or collected."

In *Hershey v. Kennedy & Ely Ins.*, 294 F. Supp. 554 (D.C. S.D. Fla. 1967) aff'd 405 F. 2d 888 (1968), the agency agreement in pertinent part read as follows:

"The agent shall collect all premiums on policies and binders issued by it. Such premiums shall be held and handled as trust funds belonging to the company." (p. 556)

The court said at page 558:

"Under such agreement any policies written by the agent upon credit were written at the agent's own risk as to whether or not the agent could or could not collect such premiums. Any extension of credit by the agent without the express authority by the company where the agency agreement requires an accounting, as it does here, is done at the risk of the agent. The agent's liability is not that of a guarantor but is an original undertaking."

*See also Daniels-Greager v. Caledonian Ins. Co.*, 86 P. 2d 264 (Colo. 1939); *Fireman's Fund Ins. Co. v. Cadillac Ins. Agency, Inc.*, 262 N. W. 312 (Mich. 1935).

The general rule is thus stated in 32 C. J. § 150 (p. 1072):

"Where an agent is authorized to collect premiums, it is his duty to account for all premiums which he has collected, or which he should have collected."

In 16 Appleman, *Insurance Law and Practice*, § 8786 (p. 389) (rev. vol. 16, 1968) it is said:

"An agency agreement may require the agent to remit all premiums reported due, not only those

premiums actually collected. Where a contract of insurance is accepted by the insurer, the agent, delivering the policy on part payment of cash and the balance evidenced by the insured's notes, is liable for the premium due. An agent extending credit to the insured for a premium beyond the time the insurer allows the agent to collect the premium becomes originally liable, not merely as guarantor; and where such agent personally extending credit fails to remit the insurer's portion of the premium and the agency is terminated, the insurer has a valid claim against the agent."

We conclude that under the agency agreement a debtor-creditor relationship was created, whereby the agent assumed the risk of collection of premiums as to which he had extended credit. Acceptance of the specific burden to collect all premiums on business written for and accepted by the company, carried with it the implied obligation to assure the payment of premiums as to which he had extended credit. Under that agreement and in the absence of credit authority "specifically * * * directed in writing" by the insurer, agent became liable to the insurer and is liable to the receiver.

## The Applefeld Premiums

Appellant contends that insurer "agreed to the financing of the Applefeld premiums" pointing to Defendant's Exhibits 7 and 11. There can be no doubt that those exhibits, standing alone, would support a conclusion by a trier of facts that financing of the Applefeld premiums had indeed been authorized. There is, however, clear evidence in the record from other sources, tending to show that no financing of such premiums had been authorized by the insurer.

The trial judge, giving consideration to that conflicting evidence, concluded that insurer had not authorized extension of credit to Applefeld. We cannot say that his decision was clearly erroneous. Rule 1086.

*Judgment affirmed.*
*Costs to be paid by appellant.*