### In re HUGHES & ASSOCIATES INSURANCE AGENCY, INC., Debtor.

### Sigmund J. BECK, Trustee, Plaintiff,

v.

### GENERAL ACCIDENT INSURANCE A/K/A General Accident Insurance Company of America, Defendant.

**Bankruptcy No. IP85–0996B.**
**Adv. No. 85–0350.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Feb. 27, 1987.

Matthew E. Wilkins, Bamberger & Feibleman, Indianapolis, Ind., for plaintiff.

Robert G. Weddle, Lloyd T. Wilson, Jr., Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for defendant.

## ENTRY ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ROBERT L. BAYT, Bankruptcy Judge.

Pursuant to Local Rule 11, the following facts claimed by the moving parties are uncontroverted and "... admitted to exist without controversy...." as neither party has submitted to this Court a "statement of genuine issues." *See* General Rule 11, S.D.Ind.

Hughes and Associates Insurance Agency, Inc. ("Hughes"), engaged in the business of selling several insurers' insurance policies. On October 1, 1973, Hughes executed an "Agency Agreement ("Agreement")" with General Accident Insurance Fire and Life Assurance Corporation, Ltd. ("Defendant"), and two other insurers. The Agreement purports to define Hughes' duties as follows.

"[Hughes] is authorized ... to solicit and submit [insurance] applications; to issue and deliver policies ...; *to collect and receipt for, hold as fiduciary and pay over to [Defendant],* in accordance with procedures hereinafter set forth, *all premiums* on business placed by or through [Hughes]; and to retain out of commissions so collected and paid, as full compensation therefor, commission at the rates set forth...." (emphasis supplied)

Agreement, I.a. The Agreement does not require segregation of monies received.

In mid–1984 Hughes "... started getting in some serious trouble with [Defendant]." August 14, 1986, Rule 2004 Examination of James A. Hughes, p. 11. By December 28, 1984, Hughes' account payable to Defendant equaled $36,435.58. On that date Hughes tendered a check to Defendant in the amount of $15,000.00. Complaint, ¶ 5(i); Defendant's Response to Trustee's First Set of Interrogatories, no. 11.

On February 1, 1985, Hughes conveyed its "fire and casualty insurance expirations" to Max S. Haimes ("Haimes") by an "Agreement for Sale of Insurance Expirations ("Sale")." The consideration for the Sale was Haimes' promise to pay Hughes fifty per cent (50%) of Hughes' renewal commissions from February 1, 1985, until January 31, 1989. Sale, ¶ 2. Haimes also agreed to "advance" Hughes the premiums owed Defendant (and others) by Hughes. Sale, ¶ 2(a). Defendant was not a party to the Sale and the Sale obviously does not affect any relationship between Hughes and Defendant.

Pursuant to the "advancement" provided by the Sale Haimes issued a check to Defendant for unpaid premiums in the amount of $25,189.79. Complaint, ¶ 5(ii).

Both aforementioned payments to Defendant occurred within ninety (90) days of March 14, 1985, the date of the filing of Hughes' Chapter 7 bankruptcy petition. Pursuant to 11 U.S.C. Section 547 the trustee seeks to avoid the payments by Hughes

and Haimes to Defendant. In pertinent part, 11 U.S.C. Section 547 states:

(b) Except as provided in subsection (c) of this section [exclusions from trustee's avoiding powers], the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Defendant claims that the transfers in question expressly represent trust funds under the terms of the Agreement, *supra*. The trustee argues without supporting affidavit(s) that the parties' course of dealing is inconsistent with trust formation and that Hughes deliberately withheld and then purposely tendered the payments in question. Further, the trustee, citing *Bushnell v. Krafft*, 133 Ind.App. 474, 183 N.E.2d 340, 345 (1962), places emphasis upon the fact that the alleged trust *res* was not segregated but commingled.

If the Agreement creates a trust then Hughes retained "bare legal title" to the collected premiums.[1] Such title does not fulfill the 11 U.S.C. Section 547 threshold requirement that "... an interest of the debtor in property" be transferred. *Accord, Matter of Torrez*, 63 B.R. 751, 753–754 (9th Cir. BAP 1986); *In re F & S Cent. Mfg.*, 53 B.R. 842, 847 (Bkrtcy.E.D.N.Y. 1985). While a possessory interest generally may constitute estate property,[2] it is settled that excluded from property of the estate is "... property of others held by the debtor in trust at the time of the filing of the petition." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2313 n. 10, 76 L.Ed.2d 515 (1983). An attempted avoidance action under 11 U.S.C. Section 547 cannot succeed unless the alleged preferential transfers "... diminish the [debtor's] estate...." *Nicholson v. First Inv. Co.*, 705 F.2d 410, 413 (11th Cir.1983) (1898 Act); *see also In re Western World Funding*, 54 B.R. 470, 475 (Bkrtcy.D.Nev.1985); *In re Hearn*, 49 B.R. 143, 145 (Bkrtcy.W.D.Ky.1985).

The existence of a trust is a matter of state law. *See In re K & L Ltd.*, 741 F.2d 1023, 1030 n. 7 (7th Cir.1984); *In re Tap, Inc.*, 52 B.R. 271, 274 (Bkrtcy.D.Mass. 1985); *Matter of Georgia Steel, Inc.*, 56 B.R. 509, 516 (Bkrtcy.M.D.Ga.1985). Generally, a valid express trust requires (1) a demonstrated intent to create a trust, (2) a trust *res*, (3) ascertainable beneficiaries, (4) a trustee, (5) specifications of a trust purpose and how the trust is to be performed, and (6) delivery of the trust *res* to the trustee. *See, e.g., Hamilton Bancshares, Inc. v. LeRoy*, 131 Ill.App.3d 907, 87 Ill. Dec. 86, 88, 476 N.E.2d 788, 790 (1985). In the instant case it appears that the parties did not intend to create an express trust: no trust *res* existed until and unless Hughes sold Defendant's policies and no

---

**1.** Assuming trust creation, the monies transferred by Haimes represent nonavoidable "earmarked funds" which "... were never in the [equitable] control of the debtor and therefore payment of these assets to a creditor in no way diminishes the debtor's estate. * * *" (citations omitted) *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356 (5th Cir.

1986); *see also In re Bellanca Aircraft Corp.*, 56 B.R. 339, 371 (Bkrtcy.D.Minn.1985).

**2.** *See, e.g., In re Madrid*, 725 F.2d 1197, 1204 (9th Cir.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984) (Farris, J., concurring); *In re Bundles*, 61 B.R. 929, 934 (Bkrtcy.S.D.Ind.1986).

clear guidelines for the trust's performance were executed. More limited trusts may be expressly intended and created, however. *See* 89 C.J.S., *Trusts,* §§ 10–17.

A "special trust" has been here created if Hughes assumed a fiduciary duty to collect and transfer premiums. As a representative of several insurers Hughes is considered an "insurance broker". *See Automobile Underwriters, Inc. v. Hitch,* 169 Ind.App. 453, 349 N.E.2d 271, 276 (1976), *quoting* 16 Appleman, *Insurance Law and Practice,* § 8732 (1968); *Stockberger v. Meridian Mut. Ins. Co.,* 182 Ind. App. 566, 395 N.E.2d 1272, 1279 (1979).

> 'An insurance broker can be considered an agent only for the purposes of delivering policies *and collecting premiums thereon.*' (emphasis supplied)

*Hitch, supra,* 349 N.E.2d at 276, *quoting* Appleman, *supra,* at § 8730. The obligations of an insurance broker may therefore be consonant with the definition of a "special agent".

> 'A special agent is one who is authorized to do one or more specific acts, in pursuance of particular instructions or within restrictions necessarily implied from the act to be done.'

*Farm Bureau Mutual Insurance Co. v. Coffin,* 136 Ind.App. 12, 186 N.E.2d 180, 182–183 (1962), *quoting Cruzan v. Smith et al.,* 41 Ind. 288, 297 (1872). A special agent may be an independent contractor. *See Burkett v. Crulo Trucking Company,* 171 Ind.App. 166, 355 N.E.2d 253, 261 (1976). Further, the fact that the alleged trust *res* is commingled rather than segregated does not necessarily preclude the existence of a fiduciary relation. *See Department of Treasury v. Ice Service,* 220 Ind. 64, 41 N.E.2d 201, 203 (1942); *In re Taxes,* 46 Haw. 292, 380 P.2d 156, 167 (1963), *citing* Restatement, Agency 2d (1958), § 398, comment c; 2 Williston, Sales, (1948), § 338.

The trustee's heavy reliance upon *Bushnell v. Krafft, supra,* is misplaced. Unlike the case at bar, *Bushnell* involved an action by a receiver of an insolvent insurer against insurance agents for allegedly "unearned commissions" rather than the actual premiums. 183 N.E.2d at 342. *Bushnell* recognized that the appellee insurance agents acted as "... *agent[s]* of the Company *for* limited purposes of ... *collect[ing] premiums* from policyholders." (emphasis supplied) 183 N.E.2d at 345.

Under Indiana law the existence of an agency relation is "... usually a question of fact...." *Thompson Farms v. Corno Feed Products, Etc.,* 173 Ind.App. 682, 366 N.E.2d 3, 10 (1977), *citing Travelers Indemnity Company of Hartford v. State ex rel. Favre,* 154 Ind.App. 553, 290 N.E.2d 456 (1972); *see also Voorhees-Jontz Lumber Company v. Bezek,* 137 Ind.App. 382, 209 N.E.2d 380, 387 (1965). However, the recent case of *Metro. Real Estate Corp. v. Frey,* Ind.App., 480 N.E.2d 267 (1985), carved an exception to this general rule when, as here, the alleged agency relation is supported by a written agreement. 480 N.E.2d at 269, *citing State v. Halladay,* 176 Ind.App. 43, 347 N.E.2d 51 (1978).

The Court finds that as a matter of law the Agreement unambiguously delegates a fiduciary duty to Hughes as special agent to collect and remit the premiums in question. F.R.Civ.P. 56(c); *accord, Trimble v. Coppage,* 259 Md. 176, 269 A.2d 563, 564 (1970); *In re Hauck's Estate,* 170 Kan. 116, 223 P.2d 707, 710 (1950); *Chicago Title & Trust Co. v. City of Waukegan,* 333 Ill. 577, 165 N.E. 348, 350 (1929); *Destitute of Bennington Co. v. Henry W. Putnam M.H.,* 125 Vt. 289, 215 A.2d 134, 137–138 (1965). The trustee's preference action therefore fails as a matter of law.

Pursuant to Rule 7052 and F.R.Civ.P. 52, this Entry constitutes all applicable findings of fact and conclusions of law.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the trustee's motion for summary judgment be, and hereby is, DENIED; IT IS FURTHER ORDERED that, there being no just reason for delay, Defendant's motion for summary judgment be, and hereby is, GRANTED, and final judgment in favor of Defendant is hereby entered.